ROBERT B. SCADRON, Plaintiff-Appellant, v. ZONING BOARD OF APPEALS OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—93—0471

Opinion filed June 30, 1994.

Fioretti & Des Jardins, Ltd., of Chicago (James P. Nally and Robert W. Fioretti, of counsel), for appellant.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and George J. Yamin, Jr., Assistant Corporation Counsel, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

Following an administrative hearing, Chicago's Zoning Board of Appeals (Board) denied an application filed by plaintiff, Robert Scadron, for a special use permit to erect an advertising sign on a North Loop building. On administrative review, the circuit court affirmed the Board's decision, and plaintiff now appeals from this ruling, raising the following issues: (1) whether the Board's decision was contrary to the manifest weight of the evidence; and (2) whether the

court erred in failing to consider, as part of the administrative review proceedings, plaintiff's requests for *mandamus* and injunctive relief to compel the City of Chicago to process his other pending permit applications.

Plaintiff applied for a permit to erect an advertising sign on the roof of a four-story building at the northwest corner of Randolph and State Streets in Chicago. In his application, plaintiff represented that the sign would measure 14 feet high by 48 feet wide, and that its top would extend 48 feet above "grade level." The subject property was located in the B7-7 zone of the city's central business district. On January 2, 1991, the city granted plaintiff's permit application, and plaintiff erected the sign on April 24, 1991.

Several months later, zoning administrator Graham Grady requested that the permit be revoked after an inspection revealed that the sign did not conform to the city zoning ordinance. Specifically, the top of the sign, which the city discovered to be 72 feet above curb level rather than the 48 feet represented by plaintiff, exceeded the maximum height allowable without a special use permit, which was 50 feet above curb level. (See Chicago Municipal Code ch. 194A, par. 8.9—7 (1983).) On December 16, 1991, after receiving notice to remove the sign, plaintiff applied to the Board for a special use permit pursuant to section 8.4—7(2) of the ordinance. (Chicago Municipal Code ch. 194A, par. 8.4—7(2) (1983).) Section 8.4—7(2) authorizes special use permits for signs in the B7-7 zone which are higher than 50 feet over curb level.

Following a hearing, the Board concluded that plaintiff's sign failed to satisfy the requirements for a special use as set forth under section 11.10—4 of the ordinance; in particular, plaintiff failed to show the use was "necessary for the public convenience" at the subject location. (Chicago Municipal Code ch. 194A, par. 11.10—4(1) (1983).) The Board noted that the sign was located in the "north loop project" area, in which all signs were prohibited except those identifying area buildings and businesses. The Board further found that plaintiff's sign, which faced the State Street shopping mall, created a visual influence inconsistent with the objectives of the North Loop project as manifested in the project guidelines (see Chicago Department of Planning, North Loop Guidelines for Conservation and Redevelopment (1989)), and that it contravened the public interest at that location. It should be noted that, despite the city's prior instruction that he remove the sign at issue, plaintiff allowed it to remain standing throughout the administrative proceedings in this case.

At the Board hearing, plaintiff offered the opinions of two expert

witnesses, the first of whom was real estate appraiser Terrence O'Brien. O'Brien gave the opinion that the proposed sign would have no adverse impact on surrounding property values and that it was harmonious and compatible with other uses in the area. O'Brien pointed out that outdoor signs had been posted on the subject property since as far back as 1957. He noted that the desire for compatibility of uses was an express goal of the ordinance and that compatibility was a central factor in the determination of whether a use would be injurious to surrounding property values. In O'Brien's opinion, the fact that the ordinance provided for the special use at issue showed that signs were generally compatible within the B7-7 district, and that they should be allowed unless they caused some adverse impact.

Plaintiff introduced photographs of large commercial signs in the Loop and near north business districts. There was no evidence as to the legality of any of these signs. O'Brien gave the opinion that the depicted signs did not adversely affect property values in the surrounding areas. Additionally, he believed that plaintiff's sign in its location was necessary for public convenience and as a means of communicating and informing the public.

Martin R. Murphy, former chairman of the city property planning department, also emphasized the importance of compatibility to the concept of zoning. He observed that, while advertising signs were completely precluded in the adjacent B6-7 business zone and in many other areas of the Loop, they were allowed freely in the B7-7 zone, subject only to the restriction that a special use permit be obtained for rooftop signs exceeding 50 feet above curb level. Murphy further testified that in the event plaintiff's special use permit were granted, there would be no danger of proliferation of rooftop signs of this height, because there was only one other location in the B7-7 district where such a sign could reasonably be erected.

Murphy then discussed how the subject sign met the prerequisites for a special use permit under section 11.10—4 of the ordinance. Specifically, the sign was "necessary for public convenience" because advertising was recognized throughout the country as a necessary ingredient of life, and provided an immense convenience in the form of communication. With regard to the requirement that the special use be designed, located, and operated so that public health, safety and welfare were protected (Chicago Municipal Code ch. 194A, par. 11.10—4(1) (1983)), Murphy testified that he had reviewed the construction drawings for the sign and an engineer's certification, and believed that the sign was safe.

In opposition to the proposed use, zoning commissioner Graham

Grady testified that the original permit had been allowed based upon plaintiff's inaccurate representation that the sign would be only 48 feet above "grade" or curb level. Additionally, city planner Tom Smith testified to his department's recommendation that the special use be denied, because rooftop advertising, in particular through large billboards, was inconsistent with the North Loop project and with current efforts to maintain the architectural and urban character of the area. It was also inharmonious with the established pattern of pedestrian-oriented signs in the area. Finally, the Board considered a letter by local alderman Ted Marzullo requesting that the permit be denied.

Following the Board's denial of his special use permit, plaintiff filed a complaint for administrative review. After a hearing, the court affirmed the Board's decision. A petition for rehearing was denied, and the instant appeal followed.

Plaintiff first argues that the Board's decision must be reversed because the evidence overwhelmingly showed that his sign complied with special use standards and that it was compatible with uses in the surrounding business area.

Under the Administrative Review Law, which governs these proceedings (see Ill. Rev. Stat. 1991, ch. 24, par. 11—13—13), the Board's factual findings are deemed *prima facie* true and correct, and its decision will not be disturbed on review unless it is contrary to the manifest weight of the evidence. (Ill. Rev. Stat. 1991, ch. 110, par. 3—101 *et seq.*; *South Side Move of God Church v. Zoning Board of Appeals* (1977), 47 Ill. App. 3d 723, 727, 365 N.E.2d 118.) A decision is contrary to the manifest weight of the evidence only where the reviewing court determines, viewing the evidence in the light most favorable to the agency, that no rational trier of fact could have agreed with the agency. (*Rubly v. Edgar* (1991), 209 Ill. App. 3d 396, 399, 568 N.E.2d 113.) If there is any competent evidence supporting the agency's determination, it should be affirmed. *Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 88, 606 N.E.2d 1111; *Farmers State Bank v. Department of Employment Security* (1991), 216 Ill. App. 3d 633, 640, 576 N.E.2d 532.

Section 11.10—4 of the ordinance provides as follows:

"No special use shall be granted by the [Board] unless the special use:

(1) a. Is necessary for the public convenience at that location;

b. Is so designed, located and proposed to be operated that the public health, safety and welfare will be protected; and

(2) Will not cause substantial injury to the value of other property in the neighborhood in which it is to be located; and

***

(4) Such special use shall conform to the applicable regulations of the district in which it is to be located." Chicago Municipal Code ch. 194A, par. 11.10—4 (1983).

The permit applicant bears the burden of proving that the proposed use meets the above standards (*Hope Deliverance Center, Inc. v. Zoning Board of Appeals* (1983), 116 Ill. App. 3d 868, 872, 452 N.E.2d 630; *Racith Corp. v. Zoning Board of Appeals* (1981), 95 Ill. App. 3d 716, 420 N.E.2d 630), or at the very least, of showing that the preclusion of the use bears no real and substantial relation to the public health, safety, morals or general welfare. *Hope Deliverance*, 116 Ill. App. 3d at 872.

The Board concluded that plaintiff failed to satisfy the requirement that the use be "necessary for the public convenience" at the proposed location. This phrase has been construed to mean expedient or reasonably convenient to the public welfare. (*Hope Deliverance*, 116 Ill. App. 3d at 873; *Foster & Kleiser, Division of Metromedia, Inc. v. Zoning Board of Appeals* (1976), 38 Ill. App. 3d 50, 53, 347 N.E.2d 493.) A use does not necessarily meet this standard, however, merely because it is a legitimate use or one which is commercially expedient to the applicant. (*Foster & Kleiser*, 38 Ill. App. 3d at 53.) Instead, the applicant must demonstrate that the community will derive at least some benefit from the proposed use. (See, *e.g.*, *Cosmopolitan National Bank v. Village of Niles* (1983), 118 Ill. App. 3d 87, 91, 454 N.E.2d 703; *Foster & Kleiser*, 38 Ill. App. 3d 50.) Finally, it is essential that a special use be compatible with the surrounding area. *La Salle National Bank v. County of Lake* (1975), 27 Ill. App. 3d 10, 325 N.E.2d 105.

In the case at bar, plaintiff failed to show that his use was necessary for public convenience or in any manner expedient to public welfare in the surrounding location. In fact, the contrary appears true. In an effort to revive plummeting retail sales and tax revenues in the North Loop, the city has undertaken intensive rejuvenation efforts there, with an emphasis on property uses which are cultural, entertainment and retail-oriented, and directed towards pedestrian traffic. According to the project guidelines, which have been adopted by the city counsel and which this court find persuasive, the decline of the North Loop has been fostered in part by urban obsolescence and decay, "further compounded by an unattractive streetscape and signage." (Chicago Department of Planning, North Loop Guidelines for Conservation and Redevelopment at 2 (1989).) Therefore, signs are subject to strict control and generally are discouraged unless they serve to identify area buildings or businesses. See Chicago

Department of Planning, North Loop Guidelines for Conservation and Redevelopment (1989).

In light of these policies, plaintiff has failed to show how his advertising sign, which greatly exceeds the 50-foot height contemplated in the special use provision, will enhance the public welfare in the North Loop area or is compatible with modern uses in the immediate vicinity. Plaintiff argues that the fact the ordinance sanctions such signs as a special use shows that the signs are harmonious within the B7-7 area. This argument is circular and ignores the fact that the allowance of a special use is contingent upon a showing of benefit to the community. Even in light of plaintiff's evidence regarding society's need for commercial communication, this requirement has not been met in this case. Thus, there is no basis upon which to reverse the Board's denial of the special use permit.

■ Plaintiff's next contention involves the disposition of counts II and III of his amended complaint for administrative review. In these counts, plaintiff sought a writ of *mandamus* and injunctive relief, to compel the city to process nine other applications pending on his behalf for signs throughout the city. Defendant moved to dismiss these claims, and plaintiff cross-moved for summary judgment. On rehearing from the denial of his special use permit, plaintiff argued that the court erroneously failed to decide his summary judgment motion. The court subsequently denied summary judgment as to counts II and III, and dismissed them with prejudice. Plaintiff now argues that the trial court erred in "failing to consider" these claims. In response to this contention, defendant argues, *inter alia*, that the claims are now moot, and moves that they be dismissed.

According to the amended complaint, the city's refusal to process plaintiff's other applications was based upon the fact that he allowed the sign at Randolph and State to remain standing well into 1993, despite the fact that its permit was revoked in 1991. The city alleged that this action was justified under ordinance section 14—40—090, which allows for the suspension of licensing privileges to any party who erects a sign without a valid permit. See Chicago Municipal Code § 14—40—090 (1990).

The record indicates, however, that on February 2, 1994, the city notified plaintiff that if he removed the sign face from the sign at issue, the city would no longer use the lack of permit for that sign as a basis for suspending his other permit privileges. The record further shows, and plaintiff admits, that he has in fact removed the requisite sign face. Thus, the request that the city be compelled to process his applications is now moot.

A claim is moot when it " 'presents or involves no actual

controversy, interests or rights of the parties, or where the issues have ceased to exist.' " (*Forest Preserve District v. City of Aurora* (1992), 151 Ill. 2d 90, 94, 600 N.E.2d 1194, quoting *People v. Redlich* (1949), 402 Ill. 270, 278-79, 83 N.E.2d 736.) It is clear that counts II and III were directed solely towards the suspension of plaintiff's permit privileges arising from his failure to remove the sign at issue. Because that sign face has since been removed and is no longer a factor in the challenged suspension, plaintiff's claim has ceased to exist. Accordingly, we affirm the dismissal of counts II and III of the amended complaint.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and CAHILL, JJ., concur.