(No. 77846.—

MILTON H. VILLEGAS, Appellee, v. THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF DOWNERS GROVE *et al.*, Appellants.

*Opinion filed September 21, 1995.*

Daniel P. Blondin, of Downers Grove, for appellants.

Kenneth E. Poris and Zachary H. Lawrence, of Poris & Lawrence, Ltd., of Lisle, and John H. Brechin, of Itasca, for appellee.

Beth Anne Janicki, of Springfield, for *amicus curiae* Illinois Municipal League.

JUSTICE McMORROW delivered the opinion of the court:

In this appeal we are asked to determine whether an ordinance promulgated by the Village of Downers Grove is void on its face or void as applied to plaintiff, Milton H. Villegas, who was discharged for cause from his position as an engineer with the fire department of the Village of Downers Grove. Plaintiff asserted in the circuit court of Du Page County that, *inter alia*, he was entitled to reinstatement and back pay because he was not afforded an adequate pretermination hearing and, therefore, his due process rights were violated. The circuit court ruled in plaintiff's favor and the appellate court affirmed. (266 Ill. App. 3d 202.) Defendants, who include officials of the fire department, the Village of

Downers Grove, and the board of fire and police commissioners of Downers Grove (board), appealed, contending that plaintiff's due process rights were not violated by the alleged defects in plaintiff's original discharge order because he received a pretermination opportunity to defend himself and, in addition, a prompt and full posttermination *de novo* hearing by the board. Defendants further argue that because plaintiff's discharge was for cause, he is not entitled to reinstatement with back pay.

We granted the defendants leave to appeal (145 Ill. 2d R. 315), and now reverse the appellate and circuit courts.

## BACKGROUND

On August 25, 1992, plaintiff was an engineer employed by the Downers Grove fire department. He was playing basketball at a fire station with three other fire fighters, Jeffrey Vandevoorde, Kevin King, and Jeffrey Oakley, when Oakley injured his ankle. At the time of the injury, plaintiff was the highest ranking person on duty. He and the others decided to falsely report that Oakley twisted his ankle in the weight room when he stepped on a barbell. In later testimony before the board, plaintiff described this decision as "a simple stupid tactical move that we made." The other fire fighters stated that they took this action primarily because they feared that their basketball privileges would be revoked if they told the truth.

Pursuant to the plan, on the day of the incident plaintiff telephoned the captain, who was the highest ranking fire department officer on duty. In that telephone conversation plaintiff attributed the cause of Oakley's injury to the lack of storage racks for the weights and the fact the racks had been cut from the budget. As a result of plaintiff's verbal report, the captain completed an untrue investigation report that mirrored plaintiff's false attribution of the injury to an unsafe

condition, *viz.,* the lack of storage racks and the unsafe elimination of funding for such racks.

Plaintiff's fabrication continued in his written report, filed on the day of the incident. Plaintiff's report attributed the cause of the injury to the assistant fire chief's act of "intentionally" leaving storage racks out of the budget. To rectify the unsafe condition, plaintiff recommended "support[ing] the fitness program by purchasing the holding racks." The other three fire fighters also filed false reports echoing plaintiff's "weight room" version of Oakley's injury.

In September 1991, Chief Wander sent each of the fire fighters involved in the incident a notice of investigation, directing each to submit to him a written report. The record reveals that the reports of plaintiff and Oakley repeated the weight room incident, while Vandevoorde's statement claimed that he did not witness the incident. King's written report related the actual facts and admitted that Oakley's injury occurred during a basketball game. Following receipt of these reports, Chief Wander served on the four men notices to attend separate interrogations regarding the matter.

On November 13, 1991, plaintiff and his counsel and union representative met with Chief Wander for the interrogation. Plaintiff admitted falsifying the report of Oakley's injury. He denied threatening or pressuring the others to adhere to the false story.

After the interrogations, Chief Wander sent plaintiff a detailed written notice of disciplinary charges and the grounds therefor. The notice informed plaintiff that before disciplinary action would be taken, the fire chief would conduct a hearing on January 23, 1992, to afford plaintiff an opportunity to appear in person and defend against the charges. During the hearing with the chief, plaintiff was allowed to explain the reasons and causes for his behavior, but no witnesses were called to testify.

The precise scope of the January 23 hearing is not ascertainable from the record filed in this court.

On February 12, 1992, plaintiff was served with written notice of the chief's finding of cause for his discharge, effective on that date. A few days later, plaintiff filed a notice of appeal to the board, in accordance with the provisions of the Downers Grove Municipal Code. On the date of the scheduled hearing before the board, however, plaintiff filed a complaint in the circuit court of Du Page County, seeking to enjoin the board from proceeding and also seeking judicial review of Chief Wander's decision. In his complaint, plaintiff stated that section 17—33 of the Downers Grove Municipal Code "appears to provide that administrative decisions of the *** chief *** can be appealed" to the board and that "any such hearing" held by the board "would be the second adjudicatory hearing on the charges against Plaintiff." Plaintiff alleged that such second hearing was not authorized by statute and that the board was not the proper entity to review the chief's final administrative decision.

The circuit court initially granted plaintiff's motion for temporary restraining order, but subsequently dissolved it on the ground that plaintiff had failed to exhaust his administrative remedies, *i.e.*, the hearing before the board. The court held that although the challenged provisions of the municipal code appeared to be facially constitutional, plaintiff could renew his constitutional challenge in court following the board's administrative hearing on the charges.

Thereafter, the board held a *de novo* evidentiary hearing on the charges against plaintiff. The charges included the filing of false written reports, neglect of duty, making false statements to a superior officer, making false statements during an interrogation regarding the false reports, and failing to show proper respect for

superior officers. The evidence adduced at the hearing reveals the following facts pertinent to plaintiff's discharge.

Plaintiff admitted his fabrications regarding Oakley's accident but denied attempting to pressure the other fire fighters to adhere to the false version of the incident.

King testified that plaintiff advised him to "stick to the story" or they could lose their jobs. According to King, plaintiff telephoned him to inquire whether King had adhered to the agreed-upon version of the incident and to suggest a meeting to discuss how the men should handle their upcoming interrogations with Chief Wander. King testified that he sought a 90-day leave of absence from work because of the pressure he felt he was under. Ultimately, King was suspended for two weeks, or 10 working days, for his participation in the incident.

Vandevoorde also testified that he felt pressured because he wanted to tell the truth but was concerned about the impact his statement would have on the others who had filed false reports. However, he decided to tell the truth about the incident when he spoke to the chief during his interrogation. For his participation in the matter, Vandevoorde received a suspension of 15 working days.

Oakley, who had filed a workers' compensation claim in which he repeated the weight room incident, was suspended for 30 working days.

After considering briefs submitted by the parties following the evidentiary hearing, the board entered an order, dated July 31, 1992, finding plaintiff guilty of four of the charges. The board ordered his termination from the department. Thereafter, plaintiff filed an amended complaint in the circuit court seeking, *inter alia*, a declaratory judgment that the ordinance violated plaintiff's rights.

The circuit court took no additional evidence but heard oral argument on the matters presented and ruled that, based on the record of the hearing before the board, the findings and decision of the board were not against the manifest weight of the evidence and were supported by the record. In addition, the court held that the discharge of plaintiff was not arbitrary or unreasonable, nor was the discipline imposed by the fire chief unrelated to the needs of the department. However, the court declared unconstitutional section 17—33(b) of the Village of Downers Grove Municipal Code because "it fails to provide employees who have been discharged by the chief of the department with the right to a de novo evidentiary review of the termination as is afforded to other employees who are not terminated." The court accordingly ordered that plaintiff be reinstated with back pay.

Defendants appealed from the provisions of the circuit court's order that declared the ordinance unconstitutional and ordered plaintiff's reinstatement. Plaintiff did not cross-appeal from the court's finding that his discharge was justified and supported by the evidence. The appellate court affirmed the circuit court, holding that the ordinance was unconstitutional on its face and as applied (266 Ill. App. 3d 202).

## ANALYSIS

In the case at bar we are asked to determine whether defendants violated plaintiff's right to procedural due process by not according him a full evidentiary hearing prior to Chief Wander's decision to terminate him. Defendants contend that plaintiff's due process rights were fully protected in light of the fact he received both a pretermination opportunity to respond to the chief's charges and an evidentiary, *de novo* hearing following his discharge. Moreover, according to defendants, even if the ordinance at issue fails to adequately provide

procedural due process to terminated employees, plaintiff's reinstatement with back pay is not a proper remedy because his discharge was justified; the proper remedy for a violation of due process is for the aggrieved party to obtain a hearing *de novo* on the charges. In the case at bar, defendants contend that plaintiff has had a full hearing on the disciplinary charges, which were held to be well-founded by the board and the circuit court, and plaintiff did not appeal from the factual findings of the board and the circuit court. Therefore, defendants argue, plaintiff cannot prove any actual injury and is not entitled to relief.

In holding that plaintiff was terminated from his employment in violation of due process, the trial and appellate courts construed section 17—33 of the Downers Grove Municipal Code, which was enacted pursuant to the village's home rule authority. (Downers Grove Municipal Code § 17—33 (1990).) This ordinance sets forth the procedures to be followed in the discipline of fire and police department personnel. In pertinent part, section 17—33 of the Code provides:

"(a) Statement of policy; departmental rules. The village council finds that day-to-day operations and disciplinary matters within the fire and police departments of the village should be the responsibility of the respective chiefs of those departments or their designee under the general supervision of the village manager, subject in certain cases to review and modification by the village manager or the board, or both, as provided in this section. It is therefore the policy of the village that minor disciplinary actions by the chiefs taken with approval of the village manager should not become a concern of the board and will not be subject to review by the board. ***

(b) Charges, disciplinary action; appeal.

(i) *** [E]ach employee within the fire and police departments shall be subject to discipline by the chief of that department for cause by written reprimand or censure, and upon the approval of the village manager, by

suspension without pay for a period not in excess of thirty working days, demotion to the next lower rank, or discharge and dismissal from the department. In any case of disciplinary action, the employee shall be notified in writing of the violation or violations of departmental rules and regulations alleged to have been committed by the employee and on which such action is based. Such statement shall be in sufficient detail to afford the employee a reasonable opportunity to identify the event and the nature of the charge, and to prepare a defense thereto. *** *Before taking disciplinary action on such charges, if any, the chief shall conduct a hearing to present such charges to the employee and to afford an opportunity for the employee to appear in person before the chief and defend against such charges.* If, following such hearing, a finding of cause for disciplinary action is made, written notice of such disciplinary action shall be served on the employee, with a copy thereof furnished to the board for its information if such action is appealable to the board under this section.

(ii) An employee who is officially reprimanded, censured or suspended for three days or less (referred to in this section as 'minor disciplinary action') may appeal such action to the village manager, who shall afford such employee a reasonable opportunity to be heard in person in his own defense.

(iii) *** [A]n employee who is demoted or suspended without pay for more than three days (referred to in this section as 'major disciplinary action') may appeal such action to the board by filing with the board a written notice of such appeal within seven days after the date of delivery to such employee of written notice of such disciplinary action, or within seven days after the informal prehearing meeting, if any, under paragraph (e) of this section whichever is later. Upon such appeal, the board shall conduct a hearing to review the disciplinary action. ***

\* \* \*

(e) Informal prehearing meeting for major disciplinary action. *** If the dispute is not satisfactorily resolved by the informal hearing, the disciplined employee shall

retain the right to appeal such determination to the board \*\*\*.

(f) Formal appeal procedures.

(i) A disciplined employee shall exercise his appeal right by filing with the village clerk a notice of appeal within the time period provided under subparagraph (iii) of paragraph (b) of this section. \*\*\* The board shall set the time, place and date for the hearing, which shall commence as promptly as practicable and in any event within thirty days after the date of filing of the notice of appeal. \*\*\*

(ii) *At the hearing, the board shall conduct de novo an independent review of the charges, the disciplinary action taken or proposed to be taken, and all evidence relative thereto and shall not limit the appeal to a review of the record made by the chief or the reasonableness of the chief's determination.* The chief and the disciplined employee may be represented by counsel and shall be given an opportunity to present evidence, call witnesses, and cross-examine opposing witnesses. The chief shall have the burden of proving the charges against the employee by the preponderance of the evidence. In the conduct of the hearing, each member of the board shall have the power to examine witnesses, to administer oaths and affirmations, and the board shall have power to secure by its subpoena both the attendance and testimony of witnesses and the production of books and papers relevant to the hearing. \*\*\*

(g) Decisions. As soon as practicable after completion of the hearing provided in paragraph (f) of this section, the board shall issue its decision upon the evidence presented and shall make written findings in support of such decision. The board may (i) sustain the action of the chief, (ii) reverse it with instructions that the employee be reimbursed for all wages withheld, if any, (iii) suspend the employee for an additional period, but not in excess of an aggregate of thirty days, or (iv) discharge such employee. The decision issued by the board shall be final \*\*\*. The provisions of the Illinois Administrative Review Act shall apply to and govern all proceedings for judicial review of final decisions of the board on appeals under this section."

(Emphasis added.) Downers Grove Municipal Code § 17—33 (1990).

In the case at bar, plaintiff received notice of the charges, a prediscipline opportunity to respond to the charges, and a post-termination evidentiary review of the charges by the board. Notwithstanding plaintiff's receipt of all procedural process set forth in the ordinance, both the circuit court and the appellate court ruled that plaintiff's due process rights had been violated. In so ruling, the courts relied on *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487, which considered the issue of "what pretermination process must be accorded a public employee who can be discharged only for cause." *Loudermill*, 470 U.S. at 535, 84 L. Ed. 2d at 499, 105 S. Ct. at 1489.

The discharged employees in *Loudermill* worked for boards of education and were discharged without first being given any opportunity to present information, explanation, or objection to their termination. Although the employees received a post-termination administrative hearing several months following their discharge, the employees filed suit in Federal district court asserting that the State law was unconstitutional on its face for failing to provide for a pretermination hearing, and unconstitutional as applied because the employees' post-removal hearings were not sufficiently prompt. The district court dismissed the pleadings for failure to state a claim on which relief could be granted. The Federal Court of Appeals for the Sixth Circuit reversed in part and remanded, holding that the balancing of constitutional interests in a pretermination hearing against the administrative burdens of such hearing favored the employees' right to predischarge hearing.

In affirming the Court of Appeals, the United States Supreme Court reiterated reasoning from its earlier

opinions that "the root requirement" of the due process clause is " 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (emphasis in original) [citation]. This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment. [Citations.]" (*Loudermill*, 470 U.S. at 542, 84 L. Ed. 2d at 503-04, 105 S. Ct. at 1493.) The Court reviewed the public employees' interest in retaining employment and in presenting their version of events before being fired, and concluded that the government interest in immediate termination did not outweigh the employees' interests. Moreover, the Court noted, a pretermination opportunity to respond to charges might minimize too-hasty termination decisions based on mistake or misunderstandings.

Having determined that the employees in question were entitled to some type of pretermination hearing, the *Loudermill* majority emphasized that such hearing "need not be elaborate" and that a full evidentiary hearing was *not* required before the employees were discharged. (*Loudermill*, 470 U.S. at 545, 84 L. Ed. 2d at 506, 105 S. Ct. at 1495.) The hearing need not definitively resolve the propriety of the discharge. Instead, the Court explained:

> "[The pretermination hearing] should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. [Citation.]
>
> *The essential requirements of due process *** are notice and an opportunity to respond.* The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. [Citation.] The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an

opportunity to present his side of the story. [Citations.] *To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.*

\* \* \*

Our holding rests in part on the provisions in Ohio law for a full post-termination hearing." (Emphasis added.) *Loudermill*, 470 U.S. at 545-46, 84 L. Ed. 2d at 506, 105 S. Ct. at 1495.

Illinois cases following *Loudermill* have recognized that due process is satisfied where employees avail themselves of the opportunity to respond to charges before being disciplined, as long as the opportunity to respond is extensive enough to guard against mistaken decisions. See, *e.g., Phillips v. Civil Service Comm'n* (1988), 172 Ill. App. 3d 278, 281-82; *Board of Trustees of Community College District 508 v. McKinley* (1987), 160 Ill. App. 3d 916 (due process satisfied by tenured teacher's informal pretermination meeting with director and full evidentiary post-termination hearing).

In the case at bar, plaintiff availed himself of his right, set forth in the ordinance, to meet with Chief Wander and respond to the disciplinary charges. Although this initial opportunity to respond was not a full evidentiary hearing, *Loudermill* does not require more than notice and an opportunity to respond to charges before termination. The purpose of the hearing before the fire chief was to give plaintiff the opportunity to explain his version of events. Plaintiff admitted his role in the fabrication. Plaintiff's incriminating admission, of itself, satisfies the *Loudermill* concern of guarding against the too-hasty termination of an employee based on a mistaken set of facts. Plaintiff has not claimed that he would have called witnesses to testify at this pretermination hearing or that there was any material information in his defense that he was unable to communicate to the chief. Nor does plaintiff argue that he was unable to fully present his defense in the subsequent

*de novo* hearing before the board or that the findings of the board were against the manifest weight of the evidence. For these reasons, we conclude that the due process guidelines explained in *Loudermill* were satisfied in the case at bar. Therefore, we hold that the circuit and appellate courts in the case at bar misapplied *Loudermill* in holding that section 17—33 of the village's ordinance is unconstitutional.

Plaintiff nonetheless contends that the ordinance is void on its face because it grants *de novo* hearings before the board only for "major disciplinary actions," as defined in the ordinance, but does not expressly provide for *de novo* hearings where the *discharge* of employees is sought. In response, defendants argue that the various provisions of the ordinance should be read *in pari materia* to support the inference that employees subject to termination were intended to enjoy the same procedural process as those subject to major discipline other than termination. According to defendants, the failure of the ordinance to expressly include discharge in the category of major discipline subject to a hearing before the board should be viewed as a drafting oversight rather than a legislative intent to preclude discharge decisions from board review. Defendants further note that the village has consistently interpreted and applied its ordinance as providing terminated employees the same right of appeal as is accorded to those who are demoted or suspended for more than three days. In support, defendants filed the affidavit of a village official who stated that there had been three cases of involuntary termination of nonprobationary police and fire department employees since section 17—33 was enacted. Each employee in those three cases was given a hearing before the board, and the board's final determination was subject to administrative review by the courts. The decisions in those cases were issued in unpublished Rule 23 orders (134 Ill. 2d R. 23).

The appellate court disposed of the above argument by stating that Rule 23 orders are not "precedential" and would not be considered. The court also rejected defendants' request for the court to interpret section 17—33 *in pari materia*, stating that courts cannot insert missing terms into a defective enactment. Instead, the appellate court applied the rule of *expressio unis est exclusio alterius*, which permits the court to infer that when a statute lists items that are covered by its terms, any omissions are intended as exclusions, even if no words expressly exclude a given item. Therefore, the court held that section 17—33 "is unconstitutional on its face because it fails to provide an employee who is discharged by the chief of the department with the *right* to appeal that decision to a neutral third party." (Emphasis in original.) (266 Ill. App. 3d at 211.) The court concluded that the ordinance "clearly and unambiguously excludes discharge and termination orders from matters which may be appealed to the Board." (266 Ill. App. 3d at 211.) Therefore, according to the appellate court, no extrinsic aids of construction may be employed to read in a right of appeal for discharged employees or to otherwise "create" constitutional rights where they were not expressly set forth in the framework of the ordinance.

In our view, the appellate court's interpretation of section 17—33 places undue emphasis on a rule of construction that is merely an aid to assist the courts in ascertaining the meaning or purpose of a legislative enactment. We further believe that such a construction fails to give proper effect to the manner in which the village has interpreted and applied its own ordinance. Although the courts are not bound by an agency's interpretation of the legal effect of language in a legislative enactment, agency interpretations generally are entitled to significant weight. (*Bonaguro v. County Officers Elec-*

*toral Board* (1994), 158 Ill. 2d 391, 398.) We acknowledge that if an ordinance or statute is drafted in a manner that unambiguously requires a construction which renders the enactment unconstitutional on its face, the fact that such enactment has been interpreted and applied in accordance with another construction may not cure the constitutional defect. However, section 17—33, in distinguishing major from minor disciplinary action, is *silent* as to the precise classification of discipline leading to discharge. We decline to infer from such silence an unequivocal intent to exclude terminated employees from the post-disciplinary hearing provisions of the ordinance. Rather, the omission of an express reference to discharge in the provisions that distinguish between minor and major disciplinary procedures gives rise to an ambiguity in the ordinance.

In construing a legislative enactment, the courts must ascertain and give effect to the overall intent of the drafters. (*Granite City Division of National Steel Co. v. Illinois Pollution Control Board* (1993), 155 Ill. 2d 149, 181.) Although section 17—33(b)(iii) fails to expressly include discharge in its definition of major disciplinary action, other provisions of the ordinance, taken collectively, support an inference that employees who are subject to discharge are to be accorded the same procedural rights as are expressly conferred on employees subject to major discipline. Section 17—33(a), which enunciates the policy that fire and police chiefs shall be responsible for the day-to-day operation and disciplinary matters involving their departments, expressly exempts from board concern *minor* disciplinary actions taken by the chiefs. Implicitly, more severe disciplinary actions shall not be excluded from the concern of the board. Section 17—33(f), which sets forth procedures to be followed in a formal hearing before the board, refers without qualification to "a disciplined employee" who

exercises the right to appeal. In light of the policy of exempting only minor disciplinary action from board review, section 17—33(f) may be construed as including in the phrase "a disciplined employee" one who is subject to discharge. Finally, section 17—33(g), which enumerates the range of decisions that may be rendered by the board following the *de novo* hearing, expressly includes the possibility of discharge. Considering the entire disciplinary scheme contained in the ordinance, we do not believe that it is reasonable to construe section 17—33 as intentionally precluding terminated employees from the same hearing procedures conferred upon those subject to "major discipline." Unlike the terms of section 17—33(a), which exempt minor disciplinary action from board concern, none of the language in the ordinance affirmatively bars an employee who is subject to termination from appealing the chief's decision to the board. Significantly, plaintiff himself acknowledged in court pleadings that he understood the post-termination procedures in the ordinance as applicable to him. Accordingly, we conclude that the fair and reasonable inference to be drawn from the ordinance as a whole is that all employees subject to disciplinary sanctions more serious than a brief suspension are intended to receive the benefit of the full hearing before the board, while minor disciplinary matters such as reprimand, censure, and three-day suspensions are intended to be resolved by the chief and village manager, without board review.

In further support of our construction of section 17—33, we observe that where possible, courts are to interpret statutes and ordinances in such manner as to avoid raising serious constitutional questions. (See, *e.g.,* *Kropel v. Conlisk* (1975), 60 Ill. 2d 17, 25-26; *Gunia v. Cook County Sheriff's Merit Board* (1991), 211 Ill. App. 3d 761.) We do not find that section 17—33 offends the

due process clauses of the State or Federal constitutions. Employees subject to both minor and major disciplinary action, including termination, are expressly granted the right to notice of charges and an opportunity to respond, before discipline is imposed. When the chief imposes discipline for minor infractions, employees may appeal to the village manager, but not to the board. In contrast, employees subject to more serious charges are accorded a full evidentiary hearing before the board after the decision of the chief is rendered. Therefore, public employees who face sanctions more severe than a short suspension are given greater procedural protection, as justified by the correspondingly greater interference with property rights in their employment. Because termination from employment represents the greatest interference, it is unlikely that defendants intended to give fire department employees who are subject to termination fewer procedural protections than those employees who are subject to mere reprimand or censure. Although the ordinance might well benefit from a clarifying amendment on this point, we conclude that the failure of section 17—33 of the Downers Grove Municipal Code to expressly include termination of employees in the definition of major disciplinary action is not of constitutional magnitude. For these reasons, we decline to adopt so narrow a construction of section 17—33 as would render the ordinance in question void.

We note that plaintiff's initial challenge to the ordinance in the circuit court was not that it failed to provide him with the right to a *de novo* hearing on the fire chief's decision to terminate him, but that it provided him one too *many* hearings. Plaintiff sought to enjoin the board from holding an evidentiary hearing on his discharge, arguing that the board's review of the fire chief's disciplinary decision would amount to a

"second administrative hearing" on plaintiff's discharge, in contravention of the board's jurisdiction. According to plaintiff's claim in the circuit court, multiple administrative hearings are not permitted under the law of administrative review. On that basis, plaintiff sought direct administrative review of Chief Wander's decision in the circuit court rather than an evidentiary hearing before the board. The circuit court rejected this challenge to the ordinance, and in the instant appeal plaintiff does not directly renew the same argument. However, plaintiff recasts this jurisdictional issue as involving the scope of power granted to the board by express legislative enactment.

Plaintiff cites the general principle that an administrative agency derives its jurisdiction from the enabling legislation and lacks power to act beyond that grant (*Robinson v. Human Rights Comm'n* (1990), 201 Ill. App. 3d 722). Plaintiff also states that subject matter jurisdiction cannot be waived or acquired (see *Lake Region Conference of Seventh-Day Adventists v. Ward* (1988), 170 Ill. App. 3d 999). According to plaintiff, the ordinance does not expressly grant board jurisdiction over terminations and therefore the *de novo* hearing that was held in the case at bar is a legal nullity. Under this reasoning, plaintiff reasserts that he was denied due process because he was not given a full and fair evidentiary hearing on the grounds for his termination *before* he was discharged.

It is true that an administrative body lacks inherent or common law authority to exercise jurisdiction not conferred upon it by legislative enactment. However, as we have held in the case at bar, the ordinance promulgated by the Village of Downers Grove contemplates that all employees subject to nonminor discipline, including discharge, shall be granted the right to a hearing before the board. The board's jurisdiction to conduct

a hearing that is consistent with due process principles is not defeated by the lack of express language in the ordinance providing that termination is included in the definition of major discipline. (See *Wagner v. Kramer* (1985), 108 Ill. 2d 413; *Kropel v. Conlisk* (1975), 60 Ill. 2d 17.) Employees have received due process hearings even in the absence of statutory authority, as where a personnel manual provides for such procedures (see *Kaiser v. Dixon* (1984), 127 Ill. App. 3d 251) or there are established policies for such hearings (see *Massie v. East St. Louis School District No. 189* (1990), 203 Ill. App. 3d 965). Defendants in the case at bar have historically interpreted and applied section 17—33 to include discharged employees in the procedural process granted to employees subject to major discipline. The fire chief, with approval of the village manager, made the initial decision to terminate plaintiff, effective on the date rendered, but plaintiff's discharge from the fire department remained subject to board approval. Plaintiff filed his appeal to the board and subsequently received the full procedural process granted by the ordinance, including the right to counsel, to present evidence, and to call and cross-examine witnesses. Under the ordinance, the burden of proof was on the fire chief. The board members were empowered to examine witnesses and require production of relevant materials. The board retained the right to reverse the chief's decision and to reinstate plaintiff with back pay, or to impose a lesser sanction. Instead, the board found the discharge justified, and confirmed that sanction. Plaintiff then sought and was accorded full judicial review of the board's final administrative determination. We reject plaintiff's argument that the board lacked subject matter jurisdiction to hold the hearing.

For the foregoing reasons, we hold that section 17—33 is not unconstitutional, either on its face or as

applied. Plaintiff was given both a pretermination opportunity to confront the disciplinary charges and explain his conduct, and a prompt, post-termination evidentiary hearing on the basis for his termination. The circuit court confirmed the board's conclusion that plaintiff's discharge was justified under the evidence. Plaintiff chose not to appeal that ruling or to argue on appeal that the sanction imposed for his conduct was too severe or disproportionate to the punishment imposed on the other fire fighters. We hold that plaintiff was not denied due process of law and is not entitled to reinstatement to his position with back pay. Therefore, we reverse the judgments of the circuit and appellate courts and confirm the decision of the board.

*Appellate court reversed;*
*circuit court reversed;*
*board decision confirmed.*