COLUMBUS DISABATO *et al.*, Plaintiffs-Appellants, v. BOARD OF TRUSTEES OF THE STATE EMPLOYEES' RETIREMENT SYSTEM *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—94—3649

Opinion filed December 4, 1996.

Samuel Frederic Freiman, of Chicago, for appellants.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Laura M. Wunder, Assistant Attorney General, of counsel), for appellees.

JUSTICE LEAVITT delivered the opinion of the court:

The plaintiffs were Secretary of State investigators, appointed pursuant to section 2—115 of the Illinois Vehicle Code. 625 ILCS 5/2—115 (West 1994). As state employees, they were "members" of the State Employees' Retirement System (SERS) (see 40 ILCS 5/14—103.06 (West 1994)), which provides retirement benefits to a wide variety of state employees under the larger aegis of the Illinois Pension Code (Code). See 40 ILCS 5/1—101 to 5/18—101 (West 1994). The plaintiffs believe that the statutory scheme by which their retirement benefits are calculated is discriminatory, and they sought to have their benefits recalculated. They now seek administrative review of a decision by the defendant, the Board of Trustees of SERS (the Board), denying their claims.

■ In 1992, after all of the plaintiffs had retired, they sent letters to the assistant executive secretary of SERS protesting the method by which their retirement benefits were calculated. As with all members of SERS, the plaintiffs' retirement benefits are calculated as a percentage of their "final average compensation." See 40 ILCS 5/14—109, 5/14—110 (West 1994). Section 14—103.12(a) of the Code defines final average compensation for most state employees, including the plaintiffs, as:

"[T]he monthly compensation obtained by dividing the total compensation of an employee during the period of: (1) the 48 consecutive months of service within the last 120 months of service in which the total compensation was the highest, or (2) the total period of service, if less than 48 months, by the number of months of service in such period." 40 ILCS 5/14—103.12(a) (West 1994).

The plaintiffs asked SERS to recalculate their retirement benefits pursuant to a 1989 amendment to section 14—103.12, which altered the basis for calculating the final average compensation of certain State Police officers:

"Notwithstanding the provisions of subsection (a), for the purpose of calculating retirement and survivor annuities of persons with at least 20 years of eligible creditable service as a State policeman, 'final average compensation' means the monthly

rate of compensation received by the person on the last day of service as a State policeman, or the average monthly compensation received by the person for the last 48 months of service prior to retirement, whichever is greater." 40 ILCS 5/14—103.12(c).

The plaintiffs believed that they served the same functions as state policemen and should, therefore, receive similar benefits. They contended that to deny them the benefit of section 14—103.12(c) was arbitrary and discriminatory.

In November 1992, the executive committee of SERS (SERS Committee) denied the request for a recalculation. The SERS Committee's ruling denying the plaintiffs' claims notes, as to each plaintiff, that his claim is premised upon the ground that section 14—103.12 is "arbitrary and discriminatory." The ruling then states, as to each plaintiff, "This appeal is similar to the Russell Watier case, which is currently waiting to be heard in the circuit court." Russell Watier is not a plaintiff in this case. The record before us contains nothing indicating what occurred in that matter. In any event, the SERS Committee denied each plaintiff's claim "based upon the statutory provisions (section 14—103.12) governing the calculation of the final average compensation." In January 1993, the Board ratified the decision of the SERS Committee.

Subsequently, the plaintiffs filed complaints in the circuit court, later consolidated, seeking review of the Board's decision pursuant to the Administrative Review Law. 735 ILCS 5/3—101 *et seq.* (West 1992). They also sought a declaratory judgment that section 14—103.12(c) is unconstitutional because they believed the distinction between them and State Police officers denied them their rights to equal protection of the laws under both federal and state constitutional provisions; that section 14—103.12(c) constituted an unlawful grant of a special privilege to State Police officers in violation of article I, section 16, of the Illinois Constitution (Ill. Const. 1970, art. I, § 16); that section 14—103.12(c) constituted special legislation in violation of article IV, section 13, of the Illinois Constitution (Ill. Const. 1970, art. IV, § 13); and that section 14—103.12(c) diminished or impaired their pension rights in violation of article XIII, section 5, of the Illinois Constitution. Ill. Const. 1970, art. XIII, § 5. The plaintiffs premised these constitutional claims upon the assertion that they performed the same job as the State Police.

In support of their argument that there was no significant difference between Secretary of State investigators and State Police officers, the plaintiffs relied upon the statutory provisions delineating the authorities and duties of each group. They also submitted several exhibits to illustrate the job duties of the investigators. After hearing

argument, the judge issued an order concluding that the plaintiffs were "substantially different as a class from State [P]olice officers" and upheld both the Board's decision and the constitutionality of the statute.

■ In reviewing an administrative decision, "the findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3—110 (West 1992). In this regard, "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court." 735 ILCS 5/3—110 (West 1994). We review questions of law *de novo*. *Villegas v. Board of Fire & Police Commissioners*, 266 Ill. App. 3d 202, 209, 639 N.E.2d 966 (1994), *rev'd on other grounds*, 167 Ill. 2d 108, 656 N.E.2d 1074 (1995). Regarding factual findings, our function is limited to ascertaining whether the findings and decision of the agency are supported by the manifest weight of the evidence. *Davern v. Civil Service Comm'n*, 47 Ill. 2d 469, 269 N.E.2d 713 (1970); *Podmajersky v. Zoning Board of Appeals*, 131 Ill. App. 3d 1072, 1075, 476 N.E.2d 1176 (1985); *Taylor v. Police Board*, 62 Ill. App. 3d 486, 491, 378 N.E.2d 1160 (1978). A decision is against the manifest weight of the evidence only if "no rational trier of fact could have agreed with the agency. *** If there is any competent evidence supporting the agency's determination ***," it will be affirmed. *Scadron v. Zoning Board of Appeals*, 264 Ill. App. 3d 946, 949, 637 N.E.2d 710 (1994).

Initially, we must address an issue of standing raised by the defendants. Each of the plaintiffs retired from his position as investigator in 1991 or 1992 with one possible exception. The defendants contend that plaintiff Edward James Foley retired in 1984, long before section 14—103.12(c) was enacted, and, therefore, he lacks standing to maintain this suit because he was not affected by the amendment. The plaintiffs claim Foley retired on December 31, 1991. We note that, in the trial court, the defendants challenged the standing of the plaintiffs as a group, but on an entirely different basis.

■ The plaintiffs cannot point to any evidence in the record to support the assertion that Foley retired in 1991. On the other hand, the defendants cite only the minutes of the SERS Committee meeting, which conclude that Foley retired in 1984. However, the record contains no evidence, documentary or otherwise, that supports the finding of the SERS Committee. Therefore, we reject that finding because it is not supported by the manifest weight of the evidence.

■ Under Illinois law, a person who is excluded from a class that receives favorable treatment has standing to challenge the classifica-

tion. See, *e.g.*, *Tobin v. McClure*, 144 Ill. App. 3d 33, 37, 493 N.E.2d 1215 (1986). Generally, lack of standing in a civil case is an affirmative defense which, if not raised in the trial court, is waived on appeal. *Jensen Disposal Co. v. Town of Warren*, 218 Ill. App. 3d 483, 486, 578 N.E.2d 605 (1991); *Olivieri v. Coronet Insurance Co.*, 173 Ill. App. 3d 867, 871, 528 N.E.2d 986 (1987). However, the appellee may defend the judgment on appeal, or urge any point in support of the judgment, even though not directly ruled on by the trial court, so long as the factual basis for determination was before the trial court. *Jensen*, 218 Ill. App. 3d at 487; *Jackson v. Chicago Board of Education*, 192 Ill. App. 3d 1093, 1099, 549 N.E.2d 829 (1989).

Although the trial judge requested briefing on the issue of standing in regard to the entire group of plaintiffs, he did not do so with regard to the issue as it is presented by the defendants on appeal. We conclude that the issue of Foley's standing based on the date of his retirement was not properly raised below. Therefore, it is waived.

As to the plaintiffs' substantive claims, the SERS Committee and the Board denied the plaintiffs' claim for recalculation of benefits based upon the clear language of section 14—130.12(c), under which the plaintiffs are not entitled to the calculation they requested. It is unclear from the SERS Committee's ruling, however, whether it made any factual findings in this regard. Rather, it apparently adopted its findings in a similar case involving a plaintiff named Russell Watier, findings not included in the record before us. Nonetheless, the administrative agency clearly considered and rejected the plaintiffs' contentions by applying the terms of the appropriate statutory provisions. As such, its decision is not against the manifest weight of the evidence.

The plaintiffs' primary contention concerning their request for a declaratory judgment is that the more favorable benefit calculation accorded State Police under section 14—103.12(c) denies them equal protection of the laws under the United States and Illinois Constitutions. U.S. Const., amend 14; Ill. Const. 1970, art. I, § 2. They argue that because there is essentially no difference in the job duties of State Police officers and Secretary of State investigators, section 14—103.12(c) creates an unreasonable and arbitrary classification.

■ If a legislative classification does not affect a fundamental right or impact a suspect class, we will uphold the classification unless it bears no rational relationship to a legitimate state goal. *People v. Esposito*, 121 Ill. 2d 491, 500, 521 N.E.2d 873 (1988). The legislature may classify different people differently, so long as the classification is not arbitrary and capricious. *People v. Kimbrough*, 163 Ill. 2d 231, 237, 644 N.E.2d 1137 (1994).

■ Although the plaintiffs assert that the legislative classification "imping[es] upon their fundamental constitutional rights," they cite no authority to support this proposition. Indeed, our courts have recognized that "[f]undamental interests generally are those that lie at the heart of the relationship between the individual and a republican form of nationally integrated government." *People ex rel. Tucker v. Kotsos*, 68 Ill. 2d 88, 97, 368 N.E.2d 903 (1977). These include such interests as the right to vote, first amendment guarantees, the right to travel, and the right to privacy. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 n.3, 49 L. Ed. 2d 520, 524 n.3, 96 S. Ct. 2562, 2566 n.3 (1976); *Tucker*, 68 Ill. 2d at 97. They do not include the plaintiffs' claim to a particular pension benefit calculation method. *Muzquiz v. City of San Antonio*, 520 F.2d 993, 1001 (5th Cir. 1975), *aff'd en banc*, 528 F.2d 499 (1976), *vacated & remanded on other grounds*, 438 U.S. 901, 57 L. Ed. 2d 1144, 98 S. Ct. 3117 (1978).

■ Even if we agreed that the plaintiffs' duties were the same as those of the State Police, "the legislature may *** differentiate between persons similarly situated if there is a rational basis for doing so." *Esposito*, 121 Ill. 2d at 501. Thus, the classification created by section 14—103.12(c) " '*must* be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for' " it. (Emphasis added.) *Heller v. Doe*, 509 U.S. 312, 320, 125 L. Ed. 2d 257, 270, 113 S. Ct. 2637, 2642-43 (1993), quoting *Federal Communications Comm'n v. Beach Communications, Inc.*, 508 U.S. 307, 313, 124 L. Ed. 2d 211, 221, 113 S. Ct. 2096, 2102 (1993); *Opyt's Amoco, Inc. v. Village of South Holland*, 149 Ill. 2d 265, 595 N.E.2d 1060 (1992). That basis need not be apparent from the legislation itself, nor must the State produce evidence to support the classification. *Heller*, 509 U.S. at 320, 125 L. Ed. 2d at 271, 113 S. Ct. at 2643. Rather, the classification "may be [legitimately] based on rational speculation unsupported by evidence or empirical data." *Heller*, 509 U.S. at 320, 125 L. Ed. 2d at 271, 113 S. Ct. at 2643.

■ We believe the legislature has implicitly expressed the basis for the classification at issue within the provisions of section 14—103.12(c). That section applies only to State Police officers who have served 20 or more years on the force. The legislature clearly made a decision to reward the service of those officers who remain on the force. The legislature could also have sought to entice experienced officers to remain on the force by rewarding them with a more favorable pension. Indeed, the legislature might have believed that it could attract better candidates to the force by offering an attractive benefits package unavailable to other state employees. We note that

the Pension Code classifies numerous types of state employees, granting varying pension benefits rights to them, despite the fact that many of their employment responsibilities may overlap. It is not for this court to "second-guess" the legislature's wisdom in this regard, and the plaintiffs must negate all of the bases supporting the legislation in order to successfully attack it. *Heller*, 509 U.S. at 320-21, 125 L. Ed. 2d at 271, 113 S. Ct. at 2643.

The only basis upon which the plaintiffs rely to negate the legitimacy of the classification, however, is that their duties are no different from those of State Police officers and thus all of the reasons the legislature could have for according State Police better pension benefits apply to them, as well. Even assuming the truth of this allegation, the state may address a problem one step at a time. *Friedman & Rochester, Ltd. v. Walsh*, 67 Ill. 2d 413, 421-22, 367 N.E.2d 1325 (1977); *Illinois Coal Operators Ass'n v. Pollution Control Board*, 59 Ill. 2d 305, 312-13, 319 N.E.2d 782 (1974). It may address itself first to what it decides is the most acute need (*Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 371, 483 N.E.2d 1245 (1985)), in this instance the recruitment and retention of qualified and experienced State Police officers.

In any event, we agree with the circuit court that the plaintiffs are substantially different from State Police officers. The plaintiffs were employed by the Secretary of State primarily "for the purpose of more effectively carrying out the provisions of the laws in relation to motor vehicles." 625 ILCS 5/2—115 (West 1994). However, they contend that, like the State Police, Secretary of State investigators have "all of the powers of police officers." We disagree with the plaintiffs' characterization of the statutory scheme.

Under the State Police Act (20 ILCS 2610/0.01 *et seq.*(West 1994)), the State Police are authorized as follows regarding the enforcement of motor vehicle laws:

> "State policemen shall enforce the provisions of The Illinois Vehicle Code *** and Article 9 of the 'Illinois Highway Code' *** and shall patrol the public highways and rural districts to make arrests for violations of the provisions of such Acts. They are conservators of the peace and as such have all powers possessed by policemen in cities, and sheriffs, except that they may exercise such powers anywhere in this State. The State policemen shall cooperate with the police of cities, villages and incorporated towns, and with the police officers of any county, in enforcing the laws of the State and in making arrests and recovering property." 20 ILCS 2610/16 (West 1994).

The State Police are further authorized by section 55a of the

Civil Administrative Code of Illinois (20 ILCS 2605/55a (West 1994)) to act as general police officers. Section 55a includes 34 specific grants of power to the State Police, such as that of investigating the criminal laws of the State of Illinois, generally, as well as "the origins, activities, personnel and incidents of crime and the ways and means to redress the victims of crimes, *** enforce all laws regulating the production, sale, prescribing, *** delivering, distributing, or use of controlled substances and cannabis." 20 ILCS 2605/55a(A)(4)(a), (A)(4)(b) (West 1994). The State Police may also employ experts or additional investigators to aid in preventing or detecting crime. 20 ILCS 2605/55a(A)(4)(c) (West 1994). The State Police are the "central repository and custodian" of criminal records in the State. 20 ILCS 2605/55a(A)(5)(a) (West 1994). They are charged with, among other things, the responsibility of investigating racetracks, arson, child abuse and neglect, and identifying and responding to reports of hate crimes. 20 ILCS 2605/55a(A)(14), (A)(17), (A)(29), (A)(31) (West 1994).

By contrast, under the Illinois Vehicle Code, the authority of Secretary of State investigators is much narrower:

"It shall be the duty of [the] investigators to investigate and enforce violations of the provisions of this Act administered by the Secretary of State and provisions of Chapters 11, 12, 13, 14 and 15 [of this Act] ***. Such investigators shall have and may exercise throughout the State all of the powers of peace officers." 625 ILCS 5/2—115 (West 1994).

Also, Secretary of State investigators "shall cooperate with the State Police and the sheriffs and police in enforcing the laws regulating the operation of vehicles and the use of the highways." 625 ILCS 5/2—116(a) (West 1994). Finally, they "shall investigate and report violations of the provisions of this Act in relation to the equipment and operation of vehicles as provided for in [s]ection 2—115 and *for such purposes* these investigators have and may exercise throughout the State all of the powers of police officers." (Emphasis added.) 625 ILCS 5/16—102 (West 1994).

Although the responsibilities of State Police and Secretary of State investigators overlap in regard to the enforcement of provisions of the Illinois Vehicle Code, the similarity ends there. Section 55a of the Civil Administrative Code grants the State Police broad police power not possessed by Secretary of State investigators. Indeed, there are few limitations on the powers of State Police officers, while the powers of investigators are, with some exceptions cited by the plaintiffs, circumscribed to those incident to investigating and enforcing motor vehicle laws.

We are also unpersuaded by the exhibits submitted to the circuit

court judge, although they do demonstrate that the plaintiffs, like all law enforcement personnel, are often called upon to perform duties beyond the ordinary. Nevertheless, the statutory duties of the State Police are substantially broader than those of the plaintiffs, and the legislature could rationally seek to reward those who take on these additional duties and who continue to perform them over a long period of time. Given that conclusion, we hold that the classification established by section 14—103.12(c) of the Pension Code does not deny the plaintiffs equal protection of the laws.

■ The plaintiffs next argue that section 14—103.12(c) violates article IV, section 13, of the Illinois Constitution, which prohibits the legislature from passing a special or local law when a general law can be applicable. Ill. Const. 1970, art. IV, § 13. The plaintiffs contend that section 14—103.12(c) constitutes a special law because it applies to only a portion of a class instead of all of the class. That is, section 14—103.12(c) applies only to State Police officers when the investigators and State Police officers are part of the same class. We have already rejected this contention. Our courts address alleged violations of the special legislation clause of the Illinois Constitution applying the same rational basis standard as that applicable to equal protection challenges. *Pre-School Owners Ass'n of Illinois, Inc. v. Department of Children & Family Services*, 119 Ill. 2d 268, 518 N.E.2d 1018 (1988); *Chicago National League Ball Club*, 108 Ill. 2d at 368. Therefore, we reject the plaintiffs' argument in this regard, as we have already held that section 14—103.12(c) is rationally related to a legitimate state interest.

■ The plaintiffs also assert that section 14—103.12(c) violates article I, section 16, of the Illinois Constitution, which provides that "[n]o ex post facto law, or law impairing the obligation of contracts or making an irrevocable grant of special privileges or immunities, shall be passed." Ill. Const. 1970, art. I, § 16. Like the plaintiffs' special legislation and equal protection challenges, this contention is rejected because there is a rational basis for the legislation. *Towns v. Kessler*, 10 Ill. App. 3d 356, 293 N.E.2d 761 (1973).

■ Finally, the plaintiffs urge that the more favorable pension benefit calculation available to State Police officers violates article XIII, section 5, of the Illinois Constitution, which provides:

> "Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Ill. Const. 1970, art. XIII, § 5.

According to the plaintiffs, the more favorable benefit calculation

available to State Police officers "clearly" diminishes and impairs their pension benefits. We disagree. In fact, section 14—103.12(c) had no effect on the investigators' benefits. It affected only the benefits of State Police officers, who, as a result of its enactment, enjoy a more favorable benefit calculation.

Nevertheless, the plaintiffs contend that any change to the pension plan in which they participated constitutes an impairment of their benefits. Neither case law nor common sense supports their position.

Our courts have held that a change in pension benefits violated article XIII, section 5, only when the facts established an actual reduction in a plaintiff's benefits. See, *e.g.*, *Felt v. Board of Trustees of Judges Retirement System*, 107 Ill. 2d 158, 481 N.E.2d 698 (1985); *Kraus v. Board of Trustees of the Police Pension Fund*, 72 Ill. App. 3d 833, 390 N.E.2d 1281 (1979). As the court stated in *Kraus*:

> "[S]ection 5 of article XIII prohibits legislative action which directly diminishes the benefits to be received by those who became members of the pension system prior to the enactment of the legislation, though they are not yet eligible to retire. Legislative action directed toward another aim, but which has an incidental effect on the pensions which employees would ultimately receive, is not prohibited." *Kraus*, 72 Ill. App. 3d at 849, citing *Peters v. City of Springfield*, 57 Ill. 2d 142, 152, 311 N.E.2d 107 (1974).

The *Kraus* court explained that the mandatory retirement age may be reduced, salary and work hours may be reduced and notice requirements may be imposed without violation of article 13, section 5, even though these may indirectly reduce benefits. *Kraus*, 72 Ill. App. 3d at 849. Here, the plaintiffs cannot demonstrate that section 14—103.12(c) actually reduced their benefits, either directly or indirectly.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

ZWICK, P.J., and McNAMARA, J., concur.