VINCENT J. KROCKA, Plaintiff-Appellant, v. THE POLICE BOARD OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—00—2639

Opinion filed December 17, 2001.

Paul D. Geiger, of Law Offices of Paul D. Geiger, of Chicago, for appellant.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Valerie Quinn, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE COUSINS delivered the opinion of the court:

Plaintiff, Vincent J. Krocka, was discharged from his position as a Chicago police officer by the Police Board of the City of Chicago (the Board) in October 1999. Krocka sought administrative review in the circuit court of Cook County. The court denied his petition for administrative review and affirmed the judgment of the Board. The is-

sues presented for review are: (1) whether the Board's findings were against the manifest weight of the evidence; (2) whether the Board's decision to terminate Krocka was arbitrary or unreasonable; and (3) whether Krocka was denied a fair hearing and denied due process before the Board.

## BACKGROUND

Vincent Krocka became a member of the Chicago police department in January 1980. He is also licensed to practice law in the State of Illinois. In 1990, Krocka was diagnosed with severe depression and began taking Prozac to alleviate his condition. In 1992, the Department discovered that Krocka was taking Prozac and after placing him on medical leave and evaluating that he was fit for continued duty, he was placed in the department's "Personnel Concerns Program."

In 1995, Krocka filed a federal lawsuit against the City of Chicago (the City) (*Krocka v. City of Chicago*, 203 F.3d 507 (7th Cir. 2000)), the Chicago police department (the Department), and several individual decision-makers under the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 *et seq.* (1994)), section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (1994)), and state tort law. Krocka alleged that placing him in the Department's "Personnel Concerns Program" solely because he was taking Prozac was a violation of the ADA and that the blood test ordered by one of the Department's doctors to determine the level of Prozac in his blood was a violation of his fourth amendment rights that subjected the defendants to liability under section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (1994)). Krocka also filed a number of state law claims, including a claim for intentional infliction of emotional distress. The district court granted partial summary judgment in favor of each party on the ADA claim, granted summary judgment in favor of Krocka on the section 1983 claim, and dismissed Krocka's state law claim. A jury returned a verdict against Krocka and the district court entered judgment in favor of the defendants on the ADA claim. The federal appellate court affirmed. *Krocka*, 203 F.3d at 518.

During discovery in the federal case, the City of Chicago sought Krocka's medical records, including reports from Krocka's psychiatrist. On November 14, 1995, an agreed protective order was issued by the federal judge. The order provided:

"1. The Plaintiff, VINCENT J. KROCKA, will provide Defendant, CITY OF CHICAGO for inspection, a copy of all his medical records from 1990 to present ***.

2. The documents contained in Officer VINCENT KROCKA'S files constitute confidential material.

3. The confidential material (hereinafter 'Confidential Material')

identified above, is for the exclusive use of the parties and attorneys of record and shall be used solely for the purpose of this litigation, and not for any other litigation or any other purpose.

4. The Confidential Material described above, and the information contained therein, shall in no way be disseminated, discussed, delivered, or disclosed by Defendants or their counsels \*\*\*."

The federal trial commenced on November 3 or 4, 1997. During cross-examination conducted by Donald Zoufal, Krocka testified that in October of 1990 he was prescribed Prozac for his depression. Krocka stated that on occasion in 1981, and 1992 or 1993, he and another officer went to a forest preserve to consume alcohol while on duty. He admitted that he called a female attorney "a cunt" during court proceedings in December 1995. He stated that years ago, he observed Officer Therese Hoffman discharge her gun but failed to report the incident. He also testified that he told his doctor that he patronized prostitutes while on duty as a police officer. Krocka further testified that he falsified his department health appraisal on at least one occasion.

Donald R. Zoufal, in his capacity as general counsel to the superintendent, sent a memorandum dated November 6, 1997, to Michael W. Hoke, assistant deputy superintendent of the internal affairs division. That memorandum stated:

"While serving as a Special Assistant Corporation Counsel in the civil case of *Krocka v[.] City of Chicago*, 95 C 0627, which is currently pending in the United States District Court for the Northern District of Illinois, the undersigned had occasion to cross-examine Police Officer Vincent J. Krocka #12756, 16th District. During that cross-examination, P.O. Krocka admitted to several rule violations which were not the subject of prior CR [complaint register] investigations. Those infractions included:

1. Drinking while on duty in 1981 and 1992.

2. Patronizing prostitutes while on and off duty prior to 1990.

3. Falsifying official Department records (Health Appraisals) in 1987, 1991, 1992, and 1993.

4. Failing to report a firearms discharge allegedly committed by Police Officer (now Sergeant) Therese A. Hoffman in connection with a vehicle pursuit occurring in 1982.

5. Calling an Assistant Corporation Counsel a 'cunt' in open court in December, 1995."

In a second memorandum dated November 6, 1997, and signed by Zoufal, he wrote: "While it is the belief of the undersigned that P.O. Krocka fabricated his account of the shooting, there is no choice but to open this CR against Sgt. Hoffman. However, I recommend that a separate CR be opened and the investigation be expedited so that this Sgt[.] can clear her name in as quick a time as is possible."

On May 15, 1997, case number 236799 was opened against Krocka alleging that Krocka failed to obey an order given by a supervisor to move away from a department vehicle. It was also alleged that during that same incident, Krocka informed a police lieutenant that he was acting as the attorney for a police officer involved in a shooting and improperly advised that officer not to make any statements.

Case numbers 241413 and 241414 were opened on November 10, 1997. On November 11, 1997, Officer Bennet Klauba was assigned to investigate case number 241413. Case number 241413 involved charges against Krocka, including accusations of past misconduct "going back as far as 1981." The allegations did not involve Sergeant Therese Hoffman.

On November 11, 1997, Sergeant Joseph Fivelson was assigned to investigate case number 241414, which involved Hoffman's alleged discharge of her firearm in 1982, 1983, or 1984 and whether Krocka and Hoffman failed to report the weapon discharge.

Case numbers 241413, 241414, and 236799 were eventually combined to form one case before the Board.

Krocka was notified in writing of the charges against him in case number 241413 and informed of his administrative hearing rights via documents dated January 12, 1998. The documents alleged that between November 4 and 6, 1997, in the United States District Court, Krocka admitted to: drinking alcoholic beverages while on duty during 1981 and 1992; patronizing prostitutes while on duty prior to 1990; falsifying official department health documents; and engaging in an "unjustified verbal altercation on 12/22/95" in the district court when he called an assistant corporation counsel a "cunt" in open court.

Krocka filed a motion to enjoin the City of Chicago from using the confidential materials that were the subject of the federal court protective order. In July 1998, the federal court judge heard argument in support of and in opposition to Krocka's motion to enjoin. The federal court judge denied the injunction, ruling that, "[O]nce [confidential materials] are received in open court as exhibits, or testimony, without a request that the public record, which—it's then a public record—be sealed, as counsel for the City says, it becomes a matter of public record; it is outside of the protection of the protective order."

In November 1998, Krocka filed a motion *in limine* with the Board alleging, in part:

> "2. The Department's evidence concerning these alleged violations, in large part, of sworn testimony Respondent gave during a lawsuit he filed, 95 C 627, in Federal Court in the Northern District of Illinois, charging that his rights under the Americans With Disabilities Act had been violated. At that time he was cross-examined

by the General Counsel to the Superintendent of the Chicago Police Department concerning the alleged violations and made certain admissions in responding to the interrogation of the General Counsel.

3. Although the General Counsel, having reviewed extensive deposition transcripts of Respondent's deposition, knew some of the precise areas he intended to question Respondent about, he did not provide any warning to Respondent as required by 65 ILCS 5/10—1—18.1.

\* \* \*

7. At the time that he was cross-examined by the General Counsel, there was in effect a protective order that provided that certain 'confidential material' was to be used only for the ADA litigation and 'not for any other litigation or any other purpose.' The cross-examination was based, in large part, on 'confidential material' provided to City Counsel about communications Respondent had with his psychologist about having consumed alcohol and having patronized prostitutes."

The motion *in limine* was denied.

Krocka's hearing before Board hearing officer Johnson commenced in May 1999. Krocka testified that on May 12, 1997, he and Officer Melissa Farina arrived at a scene regarding the discharge of a weapon by Officer Agustin Cervantes. While speaking to Cervantes, plaintiff heard Hoffman say to him, "[S]tep away from the car." Plaintiff raised his hand and said "sorry" and looked at Cervantes and said, "[R]emember what I said, best of luck." Krocka closed the door and returned to his car. Krocka testified that prior to his federal court testimony in November 1997, he did not ever report that Sergeant Hoffman had failed to report that she had discharged her weapon back in 1983 or 1984. He stated he did not hate Sergeant Hoffman.

Officer Melissa Farina testified that on May 12, 1997, she heard "Sergeant Hoffman ask Officer Krocka to get away from the car or something to that effect." Krocka walked away from the car and sat in the squad car with Farina.

Lieutenant Ned Dolcimascolo testified that in his capacity as watch commander over plaintiff, he did not have any discipline problems with plaintiff.

Officer Renee Kalinowski testified that on the occasions that she observed plaintiff in the presence of supervisors, he communicated with them professionally.

Officer Michael Keefe testified that he thought plaintiff to be "a fine officer." Keefe and plaintiff were partners for approximately nine months.

Sergeant Robert Bokowski worked for the internal affairs division and conducted general investigations. He conducted the investigation of Krocka's actions during the May 12, 1997, incident. At the Board hearing, he was asked whether he would take a supervisor's word over a subordinate and Bokowski responded, "Not all the time." However, he could not recall an instance in which he ever sustained a case against a supervisor and in favor of the subordinate.

Joseph Fakuade of the office of professional standards testified that he conducted a preliminary investigation of the alleged discharge of Officer Cervantes' weapon on May 12, 1997. At no time was he asked to investigate an incident involving Krocka.

Officer Agustin Cervantes testified that on May 12, 1997, he was involved in an off-duty police shooting on his way to work. He was shaken by the incident. He recalled that he was placed in Krocka's squad car, Krocka introduced himself and told him that he was an attorney, Krocka told him to contact the "FOP" before making any statement, and if he needed any assistance he would be glad to help him.

Lieutenant Robert Fine testified that he arrived at the scene of the shooting and explained to Cervantes that it was his responsibility to obtain a general statement of what transpired. Fine testified that on May 12, 1997, at the scene of the shooting, Officer Krocka told him that he was an attorney, that Cervantes was his client, and " 'I am advising him not to say anything to you at this time.' "

Officer Therese Hoffman testified that on May 12, 1997, she arrived at the scene of the shooting along with Lieutenant Fine. Hoffman recalled stating to Krocka, "Officer Krocka, step away from the car now. Step away from my squad." She stated that he turned around and said, " 'I don't have to. I am acting as an attorney here on behalf of this officer, and I don't have to take orders from you or anyone else.' " On cross-examination, Hoffman stated that she did not think that Krocka is worthy of being a police officer and she testified, "I think that he is a wimp and a coward."

Sergeant Bennet Klauba was called by Krocka as an adverse witness. Klauba handled the investigation of case number 241413 against Krocka. Klauba affirmed that Krocka "was accused of various acts of misconduct relating as far back as 1981." He spoke with the complainant, Donald Zoufal, and took a statement from Officer Krocka. In his investigation, he obtained "documents." "The documents were of Officer Krocka testifying under oath in federal court, and his testimony acknowledged infractions of department rules and regulations or violation of the law." He did not investigate beyond obtaining the transcripts of Krocka's federal court testimony.

Sergeant Joseph Fivelson testified that he was assigned to investigate case number 241414. In that case, Krocka was accused of observing his partner discharge a weapon in connection with a vehicle pursuit, reload the weapon and then deny firing it when asked by a supervisor, and failing to report the improper actions of his partner. Hoffman was accused of firing her weapon during a police pursuit on or about 1982, 1983, or 1984 and failing to report it. Hoffman denied the allegations in a written report. In his investigation, Fivelson took a statement from Krocka but "chose not to" take a statement from Hoffman "[b]ecause there was absolutely no evidence that I'd be able to sustain a case against her." Fivelson also testified that although in his summary report he did not specifically refer to the authorization from the superintendent, the authorization from the superintendent was included as an attachment.

Peter Chapman, the senior counselor at Rush Behavioral Health Program in Lake Forest, Illinois, identified some of the symptoms of depression and the interrelationship between alcoholism and depression. He testified that he was Krocka's primary counselor in the treatment program from August 1998 to November 1998. He recalled that Krocka was "compliant with recommendations through the course of the treatment."

Psychiatrist Peter Fink testified that he treated Vincent Krocka in the past for depression. He also provided a general definition of depression and its manifestations. He noted that, previously, he had concerns that Krocka was "using alcohol as partial self-medication." But Fink also stated, "Mr. Krocka does not have an alcohol abuse problem at this time."

Donald Zoufal, chief assistant corporation counsel for the City of Chicago, testified that he is the chief for the section of the law department that "deals primarily with allegations [of] systematic police misconduct." In the civil case filed by Krocka, Zoufal acted as a special assistant corporation counsel. He testified that during Krocka's ADA case, he was still paid by the Chicago police department, his pay status as a special assistant corporation counsel did not change, and he did not receive additional pay as such. It was his duty to initiate investigations, but he stated that he did not make determinations on investigations. He initiated the case against Krocka after the federal trial verdict was rendered. Zoufal testified that as general counsel to the superintendent, he is bound by the Department's general orders, including General Order 93—3. He stated that he read Krocka's federal court deposition well in advance of the Board hearing.

Krocka's hearing before the Board closed. The Board's written findings and decision, dated October 29, 1999, provided the following:

"The Police Board of the City of Chicago, as a result of its investigation of the charges, finds and determines that:

\* \* \*

5. Police Officer Vincent J. Krocka's Motion in *Limine* is hereby denied.

6. The Respondent Police Officer Vincent J. Krocka, Star No. 12756, charged herein, contrary to the Rules and Regulations, is *guilty* of violating to wit:

*Rule 1*: **Violating any law or ordinance**, in that prior to 1990, Police Officer Vincent J. Krocka, Star No. 12756, while on duty, slept with prostitutes, thereby violating 720 ILCS 5/11—18, by patronizing prostitutes.

*Rule 2*: **Any action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department**, in that:

Prior to 1990, Police Officer Vincent J. Krocka, Star No. 12756, while on duty, slept with prostitutes \*\*\*.

In 1981 and 1992 or 1993, Police Officer Vincent J. Krocka, Star No. 12756, drank alcoholic beverages while on duty \*\*\*.

On December 22, 1995, Police Officer Vincent J. Krocka, Star No. 12756, while in Federal Court, called Assistant Corporation Counsel Eileen B. Libby a 'cunt' \*\*\*.

In or about the fall of 1983 or early 1984, Police Officer Vincent J. Krocka, Star No. 12756, observed his partner, Sergeant Therese Hoffman, discharge her weapon, about which Krocka failed to inform the Department of her action after he became aware that Sergeant Hoffman was not going to report her action \*\*\*.

On May 12, 1997, at or near 5259 North Lind, Chicago, Illinois, Police Officer Vincent J. Krocka, Star No. 12756, while on duty, failed to obey an order given to him by a supervisor to move away from the supervisor's vehicle and to cease talking to the person in the vehicle \*\*\*.

*Rule 3*: **Any failure to promote the Department's efforts to implement its policy or accomplish its goals**, in that:

On May 12, 1997, at or near 5259 North Lind, Chicago, Illinois, Police Officer Vincent J. Krocka, Star No. 12756, while on duty, informed Lieutenant Fine that he was acting as the attorney for an officer involved in a shooting incident and advised that officer not to make any statements \*\*\*.

\* \* \*

*Rule 6*: **Disobedience of an order or directive, whether written or oral** \*\*\*.

\* \* \*

*Rule 7*: **Insubordination or disrespect towards a supervisory member on or off duty** \*\*\*.

*Rule 8*: **Disrespect to or maltreatment of any person, while on or off duty** \*\*\*.

*Rule 14*: **Making a false report, written or oral,** in that:

In 1987, Police Officer Vincent J. Krocka, Star No. 12756, lied and willfully omitted information when he completed and affirmed that the information contained in his official 1987 Department Health Appraisal form was correct, thereby making a false report.

\* \* \*

*Rule 17*: **Drinking alcoholic beverages while on duty or in uniform, or transporting alcoholic beverages on or in Department property, except in the performance of police duty** \*\*\*.

\* \* \*

By reason of the findings of fact, the Respondent is guilty of violating Rules 1, 2, 3, 6, 7, 8, 14, and 17. Cause exists for the separation of the Respondent, Police Officer Vincent J. Krocka, Star No. 12756, from the Department of Police and from the services of the City of Chicago." (Emphasis in original.)

Krocka filed a petition for administrative review in the circuit court of Cook County in November 1999, alleging, in pertinent part:

"d. The Board erred in allowing improper evidence into the record and considered certain evidence offered for a limited purpose as direct and substantial evidence of guilt;

\* \* \*

g. The hearing officer and the Police Board demonstrated a bias against plaintiff;

h. The Board's failure to hear any of the evidence, and its lack of participation in the decision making process denied plaintiff of his rights to due process;

\*\*\*

j. The Superintendent conducted an improper and/or illegal investigation of the plaintiff \*\*\*."

The court received briefs and memoranda in support of the parties' positions. The circuit court denied Krocka's complaint for administrative review and affirmed the decision of the Board stating, in part:

"The findings here are indeed supported by the evidence.

\*\*\*

I think that the hearing officer was very fair to both sides in his conduct of the hearing.

\* \* \*

I think that the record here shows indeed a very strong basis for the caused termination of this police officer. You can't get around this.

He has admitted that on duty he was drinking as a Chicago Police Officer; on duty he was involved with one or more prostitutes; on duty, now, he falsely filled out health forms. He engaged in various other types of activity: Using profanity to assistant corporation counsel at Federal court. And then there's the whole question of his insubordination and the way that that took place out there in the street. And, so, it seems to me that those items warrant termination from the police department under the law."

The court issued its order denying Krocka's petition for administrative review and affirming the decision of the Board on July 11, 2000.

## ANALYSIS

■ In the instant case, Officer Krocka was discharged from his position as an officer by the Board and the circuit court denied his petition for administrative review. As the reviewing court, we review the decision of the Board, not that of the circuit court. *AFM Messenger Service, Inc. v. Department of Employment Security*, 315 Ill. App. 3d 308, 312, 733 N.E.2d 749 (2000). The scope of review of an administrative agency's decision regarding discharge requires a two-step analysis. *Kappel v. Police Board*, 220 Ill. App. 3d 580, 588, 580 N.E.2d 1314 (1991). First, a court must determine whether the agency's findings are contrary to the manifest weight of the evidence. *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 427, 603 N.E.2d 477 (1992). Second, the reviewing court must determine whether the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist. *Launius*, 151 Ill. 2d at 435. Thus, "the agency's decision as to cause will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service." *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n*, 85 Ill. 2d 547, 552, 426 N.E.2d 885 (1981).

## I

■ Krocka asserts that the Board's findings and decision were against the manifest weight of the evidence. The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facie* true and correct. 735 ILCS 5/3—110 (West 1998). "Only if, after reviewing the evidence in a light most favorable to the Board, we determine that no rational trier of fact could have reached the conclusion reached by the Board are we able to overturn a decision under this standard." *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 153 Ill. 2d 508, 514, 607 N.E.2d 182 (1992).

In the instant case, after a review of the record, we conclude that the Board's factual findings were supported by the record. The hearing officer heard Krocka state that he testified in federal court that he had patronized prostitutes while on duty, falsified his departmental health appraisal, consumed alcohol while on duty, and used vulgar language toward or about an assistant corporation counsel while in federal court. The Board also received a copy of Krocka's sworn federal court testimony. The evidence before the Board indicated that Krocka violated departmental rules and regulations and the law. In our view, after reviewing the evidence in a light most favorable to the Board, the Board's findings were not contrary to the manifest weight of the evidence.

## II

■ Krocka asserts that the Board's decision to discharge him was both arbitrary and unreasonable. The Board has "considerable latitude" and "considerable discretion" in determining what constitutes cause for discharge. *Kappel*, 220 Ill. App. 3d at 590. "Cause" for discharge has been judicially defined as " 'some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.' " *Kappel*, 220 Ill. App. 3d at 589, quoting *Department of Mental Health*, 85 Ill. 2d at 551. Unlike the Board's findings of fact, determinations of cause are subject to judicial review to determine if the charges brought are unreasonable or arbitrary, and if the dismissal is unrelated to the requirements of service. *Tate v. Police Board*, 241 Ill. App. 3d 927, 936, 609 N.E.2d 762 (1993). If there is competent evidence in the record that supports the Board's findings, those findings should be affirmed. *Scadron v. Zoning Board of Appeals*, 264 Ill. App. 3d 946, 949, 637 N.E.2d 710 (1994).

Krocka cites to several inapposite cases to support his contention that we should remand this matter to the Board with directions to impose a sanction less than discharge. Krocka cites to *Mihalopoulos v. Board of Fire & Police Commissioners*, 60 Ill. App. 3d 590, 376 N.E.2d 1105 (1978). However, contrary to Krocka's summary of the case, in *Mihalopoulos*, the appellate court ultimately held that the board's findings were supported by sufficient evidence in the record and were not contrary to the manifest weight of the evidence. *Mihalopoulos*, 60 Ill. App. 3d at 596. Moreover, the appellate court held that the board did not abuse its discretion in determining that the officer's acts constituted "cause" for discharge. *Mihalopoulos*, 60 Ill. App. 3d at 598.

Krocka also relies on *Massingale v. Police Board*, 140 Ill. App. 3d

378, 488 N.E.2d 1289 (1986). In that case, a police officer sought administrative review of a decision discharging her from service following her plea of guilty to reckless driving of an automobile while off duty. *Massingale*, 140 Ill. App. 3d at 378-79. The appellate court held that the sanction of discharge was unduly harsh. *Massingale*, 140 Ill. App. 3d at 382. The court wrote: "The loss of a job is both a harsh discipline and a serious deprivation to impose on plaintiff." *Massingale*, 140 Ill. App. 3d at 382. However, in *Massingale*, unlike the instant case, the police board in that case only had the single violation before it to consider. *Massingale*, 140 Ill. App. 3d at 382.

An instructive case is *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 603 N.E.2d 477 (1992). In *Launius*, police officer Clifford Launius left his assigned post and went home after receiving information from his wife that flood waters were running into his home. Because of his action, he was discharged from his position as a police officer with the Des Plaines police department after the police board found that he abandoned his post, refused to perform his duties, and demonstrated substantial shortcoming which rendered continuance in employment in some way detrimental to the discipline and efficiency of the police department. *Launius*, 151 Ill. 2d at 423-25. Launius filed for administrative review. The trial court affirmed the board's order and plaintiff appealed. The appellate court, with one justice dissenting, reversed and remanded the matter to the board so that it could consider a more appropriate sanction. *Launius*, 151 Ill. 2d at 427.

The issue before the Illinois Supreme Court was whether the board's findings were against the manifest weight of the evidence. *Launius*, 151 Ill. 2d at 427. The court held that the board's decision was not unrelated to the needs of the service or arbitrary and unreasonable. *Launius*, 151 Ill. 2d at 445. The court wrote: "When reviewing the findings of an administrative agency, a court should inquire whether the findings are against the manifest weight of the evidence." *Launius*, 151 Ill. 2d at 427. The court also wrote: "This court must determine whether the board's findings of fact supported its conclusion that cause existed for plaintiff's discharge." *Launius*, 151 Ill. 2d at 435.

As the reviewing court, we may not consider whether we would have imposed a more lenient disciplinary sentence. *Wilson v. Board of Fire & Police Commissioners*, 205 Ill. App. 3d 984, 992, 563 N.E.2d 941 (1990). Review is limited to a determination of whether the Board acted unreasonably or arbitrarily by selecting a type of discipline that was inappropriate or unrelated to the needs of the service. *Wilson*, 205 Ill. App. 3d at 992. "It is apparent that a police officer who does not

abide by the laws that he has a duty to enforce will impair the discipline and efficiency of the police force." *Jones v. Civil Service Comm'n*, 80 Ill. App. 3d 74, 76, 399 N.E.2d 256 (1979).

Based upon our review of the record, including the testimony of Krocka and other witnesses at the Board hearing, it is our view that the Board's decision to discharge Krocka from his duties as a police officer was not arbitrary or unreasonable.

## III

Krocka also contends that he was denied a fair hearing and was denied due process before the Board. Specifically, he asserts: the hearing officer erred in allowing his federal testimony to be admitted; the acts of Donald Zoufal violated state statute; the Department "never properly obtained authority" to investigate Krocka's alleged misconduct, which was more than five years old; the superintendent improperly combined three separate and unrelated "CR" investigations involving Krocka; and Sergeant Bokowski never obtained authorization to continue his investigation beyond 30 days.

Initially, we recognize that administrative hearings are governed by the fundamental principles and requirements of due process of law. *Comito v. Police Board*, 317 Ill. App. 3d 677, 686, 739 N.E.2d 942 (2000). A fair hearing before an administrative entity must include the opportunity to be heard, the right to cross-examine adverse witnesses, and impartial rulings on the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 95, 606 N.E.2d 1111 (1992). The record here establishes that Krocka was not denied a fair hearing before the Board. Krocka was represented by counsel and had the opportunity to be heard and cross-examine witnesses, and we cannot say that the hearing officer was biased toward either side when ruling on objections and admissibility of evidence.

Krocka contends that the hearing officer erred in allowing his federal testimony to be admitted. He relies on the protective order granted at trial regarding the use of confidential materials, such as psychiatric records. We agree with the federal trial court that ruled that Krocka waived his protection when he testified to the contents of the materials and when the documents were entered into evidence.

Krocka asserts that the acts of Donald Zoufal violated section 10—1—18.1 of the Illinois Municipal Code (65 ILCS 5/10—1—18.1 (West 1998)) and require the reversal of the "majority of the Police Board's findings." Specifically, he contends that the cross-examination conducted by Zoufal at the federal trial must be considered interrogation or examination within the meaning of that statute. We disagree. The statute states: "Before any such officer or employee may be inter-

rogated or examined by or before any disciplinary board, or departmental agent or investigator," he must be advised in writing that his admissions made in the course of the hearing or interrogation may be used as the basis for charges seeking his discharge. 65 ILCS 5/10—1—18.1 (West 1998). Zoufal's questioning occurred during the federal trial that was initiated by Officer Krocka and was based upon his deposition and in-court testimony. We cannot say that the cross-examination conducted by Zoufal, as special assistant corporation counsel, was the type of situation contemplated by the statute.

Krocka also asserts that Zoufal was an agent of the Chicago police department when he cross-examined Krocka. As stated earlier, during the federal trial, Zoufal defended the City as a special assistant corporation counsel and not as counsel to the superintendent.

Krocka avers that the Department never properly obtained the authority to investigate his alleged misconduct, which was more than five years old. In the instant case, while the actions may have occurred over five years ago, the instances were not known to the Department until the federal trial in November 1997. The charges against Krocka were timely filed thereafter.

Krocka also asserts that General Order 93—3 does not allow for the "stacking of CR numbers." A copy of General Order 93—3 was provided in appellees' brief. General Order 93—3, effective January 15, 1993, includes complaints and disciplinary procedures, members' bill of rights, specific responsibilities of members, procedures for investigating a complaint, suspensions, and responsibilities of an accused member. However, General Order 93—3 does not preclude the combining of case numbers for investigative or prosecutorial purposes. Moreover, Krocka does not present any case law to support his contention that the "stacking" of the case numbers was improper.

Krocka also contends that Sergeant Bokowski never obtained authorization to continue his investigation beyond 30 days, which constitutes, in Krocka's view, misconduct. However, Krocka's contention is not substantiated by the record.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

COHEN, P.J., and McNULTY, J., concur.