2016 IL App (1st) 151979

FIFTH DIVISION
JULY 8, 2016

No. 1-15-1979

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| TIMOTHY McDERMOTT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 14 CH 17623 |
| THE CITY OF CHICAGO POLICE BOARD and EDDIE | ) | |
| JOHNSON, Superintendent of Chicago Police, | ) | |
| | ) | Honorable |
| | ) | Thomas R. Allen, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.[*]
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff, Timothy McDermott, appeals from an order of the circuit court of Cook County

affirming the decision of the City of Chicago Police Board (Board) that found him in violation of

three Chicago police department (Department or CPD) rules and ordered him discharged. The

charges against plaintiff arose from his appearance in a photograph that depicted him and another

Department officer holding long guns and crouching next to an African-American male who was

lying on the ground with his tongue sticking out. Plaintiff's hand was around the man's throat

_____

[*]This case was recently reassigned to Justice Burke.

and the other officer was holding a pair of deer antlers against the back of the man's head. After a hearing, the Board determined that plaintiff, by appearing in the photograph, impeded the Department's efforts to achieve its policy and goals, brought discredit upon the Department, disrespected the unidentified African-American male, and unlawfully or unnecessarily used or displayed a weapon in violation of the Department's rules. Plaintiff sought administrative review of that decision, and the circuit court dismissed his petition. On appeal, plaintiff argues that the hearing officer erred in denying his prehearing request to have the Board take administrative notice of two complaint register investigative files (CR files), and that the Board's decision to discharge him was arbitrary, unreasonable, and unrelated to the requirements of service.

¶ 2       For the following reasons, we affirm the decision of the Board finding plaintiff in violation of three of the Department's rules and his subsequent discharge from the CPD.

¶ 3                                    I. BACKGROUND

¶ 4       On March 24, 2014, the Chicago police superintendent (Superintendent) filed charges against plaintiff alleging the violation of four Department rules. The Superintendent charged plaintiff with violating Rule 2, "[a]ny action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department," Rule 6, "[d]isobedience of an order or directive, whether written or oral," Rule 8, "[d]isrepect or maltreatment of any person, while on duty or off," and Rule 38, "[u]nlawful or unnecessary use or display of a weapon." The Superintendent contended that the charges arose from plaintiff's appearance in a photograph, with no valid police purpose, with a former CPD officer sometime between October 14, 1999, and July 1, 2003. The Superintendent asserted that plaintiff's appearance in the photograph violated the Department's rules because in the photograph, plaintiff and the former CPD officer are posing on their knees, holding rifles, while kneeling over an unknown African-

American man. Plaintiff's hand is on the throat of the unknown African-American man who is wearing deer antlers on his head, lying on his stomach, and sticking out his tongue.

¶ 5   Prior to a hearing on those charges before the Board, plaintiff filed a motion *in limine* asking the Board to take administrative notice of the two CR files, or, in the alternative, allow him to introduce the CR files as mitigating evidence.[1] The CR files involved CPD investigations into allegations of misconduct against other police officers in unrelated cases. In his motion, plaintiff contended that the CR files were relevant to the Board's determination because they demonstrated that the Superintendent exercised discipline differently in other cases. The first CR file involved two police officers who appeared in a photograph standing in front of an airplane crash at Midway Airport in December 2005. The photograph was unauthorized and unrelated to the ongoing investigation. The photograph was disseminated through the officers' personal e-mail accounts and received attention in the local news, which reported that a six-year-old boy died in the crash. According to the investigator's report, each officer was found in violation of Rule 2.

¶ 6   The second CR file attached to plaintiff's motion involved a photograph of a group of officers standing behind a kneeling arrestee at the G-20 summit in Pittsburgh, Pennsylvania, in September 2009. The investigation revealed that one of the officers in the photograph, and the officer who took the photograph, were Chicago police officers. The photograph was unauthorized and served no valid police purpose. A video of the incident was posted to the Internet. Both officers were found in violation of Rule 3 ("[a]ny failure to promote the Department's efforts to implement its policy or accomplish its goals") and received the penalty of "reprimand" pursuant to mediation.

---

[1]We observe that plaintiff orally amended the title of this motion *in limine*, at the hearing officer's request, to "Motion for the Police Board to take Administrative Notice." In their briefs before this court, however, both parties refer to this pleading as plaintiff's "motion *in limine*."

¶ 7             On April 17, 2014, the parties appeared before a hearing officer for the Board for a ruling on plaintiff's prehearing motions. In support of his motion *in limine*, plaintiff contended that the Board may consider any relevant information that would assist it in determining the administrative action required. Plaintiff stated that the CR files were relevant because they involved situations where police officers appeared in photographs that depicted the mistreatment of people, which was the same issue presented in this case. Plaintiff contended that the Board could consider the fact that the Superintendent did not seek to discharge any of the officers involved in the two CR files. Plaintiff concluded that it "would defy common sense" to find that these CR files were not relevant in this case, but acknowledged that neither of the incidents described in the CR files involved plaintiff and neither came before the Board for its consideration.

¶ 8             In response, the Superintendent pointed out that the CR files involved unrelated cases that did not result in hearings before the Board. The Superintendent stated that plaintiff "keeps arguing that these must be relevant and it would be absurd to argue that they're not relevant, but the case law is crystal clear on when you are allowed to compare cases for how arbitrary the punishment is for an employee." The Superintendent cited *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419 (1992), for the proposition that the Board could not consider the CR files because the incidents involved were not "completely related" and did not contain "identical circumstances." The Superintendent further noted that the CR files did not include a trial or an administrative hearing, so they were not the types of records that would be suitable for administrative notice.

¶ 9             In denying plaintiff's motion, the hearing officer stated that the supreme court's decision in *Launius* meant that one body should not be permitted to take administrative notice of another

body's decision when the cases involve different individuals. The hearing officer observed that in the CR files, the Superintendent meted out the discipline and neither case came before the Board, but in this case the Board would mete out the discipline. The hearing officer believed it would be inappropriate to ask the Board to look at another entity's decision to assist it in making its ruling. Accordingly, the hearing officer denied plaintiff's motion for the Board to take administrative notice of the CR files.

¶ 10    On April 28, 2014, the parties appeared before the Board for a hearing on the charges against plaintiff. At the hearing, plaintiff testified that he "[v]ery, very vaguely" recalled posing for the photograph and remembered "walking through" and someone asking him to take a picture. Plaintiff identified himself in the photograph and the other officer as Jerome Finnegan, but he could not identify the African-American male. Plaintiff testified that it appeared that the photograph was taken in a police district office, but that he was not "100% sure."

¶ 11    Plaintiff further testified that he worked in the special operations section from October 14, 1999, until May 27, 2003, which was the same unit Officer Finnegan was working in "off and on" during that time. Plaintiff testified that he never worked with Officer Finnegan before or after his time in the special operations section. Plaintiff further testified that in the photograph, he is kneeling down next to an African-American male who has deer antlers on his head. Plaintiff acknowledged that in the photograph, he is holding a "long gun" and his hand is on the "neck area" of the African-American male. Finally, plaintiff testified that he willingly participated in the photograph and that there was no police purpose for it. On cross-examination, plaintiff stated that he knew the picture was taken during his time in the special operations section because that was the only time he worked with Officer Finnegan.

¶ 12    Chicago police sergeant Michael Barz testified that he received the photograph from an

Assistant United States Attorney (AUSA) on January 31, 2013, and that he was not aware of the CPD bureau of internal affairs receiving a copy of the photograph before he received it from the AUSA. He testified that he was able to identify plaintiff and Officer Finnegan in the photograph, but the African-American male was never identified. He further testified that he interviewed plaintiff about the photograph in 2013, and that he did not know when the photograph was taken, but believed it was between October 14, 1999, and May 27, 2003, when both plaintiff and Officer Finnegan worked in the special operations section. The Superintendent then rested and the hearing officer denied plaintiff's motion for a directed finding.

¶ 13 Plaintiff testified on his own behalf regarding his family history and employment background. He also testified that during his time as a Chicago police officer, he received 74 awards and 11 department commendations for his police work. Plaintiff then presented the testimony of four character witnesses. Philip Cline testified that he was the former superintendent of the CPD and had known plaintiff for 10 years. He testified that plaintiff was "the type of policeman" he wanted working for the Department and that he had a good reputation among his peers, supervisors, and command members. Thomas Mills testified that he was plaintiff's direct supervisor while plaintiff was a detective in the violent crimes section, and that he had nothing negative to say about plaintiff who had always acted professionally. John Folino testified that he worked as plaintiff's partner for seven years in the detective division and characterized his work as "exemplary." Thomas Byrne testified that he was the former deputy superintendent of the CPD and plaintiff's stepfather. He testified that plaintiff was a "great guy" and he did not want him to be discharged from the Department.

¶ 14 Following the hearing, the Board read and reviewed the record of the proceedings and viewed a video recording of the witnesses. The Board found that plaintiff's appearance in the

photograph violated Department Rules 2, 8, and 38, but not Rule 6. The Board noted that although plaintiff did not recall when the photograph was taken, he acknowledged that it was taken while he was working in the special operations section. In finding that plaintiff violated Rule 2, the Board found that his appearance in the photograph showed conduct that impeded the Department's efforts to achieve its policy and goals and brought discredit upon the Department. The Board further determined that plaintiff violated Rule 8 regardless of whether the unidentified African-American male participated willingly in the photograph. Finally, the Board found that plaintiff violated Rule 38 because in the photograph he is holding "what appears to be a rifle" and plaintiff acknowledged that there was no police purpose for the photograph.

¶ 15    The Board then reviewed the mitigation evidence plaintiff presented, including the testimony of the four character witnesses and plaintiff's work and commendation history. The Board determined, however, that these factors did not "mitigate the seriousness of his misconduct." The Board stated that the photograph depicted plaintiff and Officer Finnegan treating the African-American male "not as a human being but as a hunted animal," which was "disgraceful and shock[ed] the conscience." The Board determined that plaintiff's appearance in the photograph discredited the CPD and impaired its effective operation by breeding public contempt for the Department. The Board acknowledged that a violation of a single rule of conduct was sufficient basis for termination and that plaintiff could not be allowed to remain an employee of the Department when he appeared in an extremely offensive and demeaning photograph. Accordingly, the Board concluded that plaintiff should be discharged from his position with the CPD. On October 30, 2014, Plaintiff filed a complaint for administrative review of the Board's decision in the circuit court of Cook County. The circuit court denied plaintiff's petition on June 10, 2015, and this appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17        On appeal, plaintiff contends that the hearing officer erred in denying his motion *in limine* requesting that the Board take administrative notice of the CR files. He maintains that the hearing officer misinterpreted *Launius* in finding that the CR files were not relevant, and that the CR files were relevant evidence of the Superintendent's "selective enforcement" of the Department's rules. Plaintiff also contends that the Board's decision to discharge him was arbitrary, unreasonable, and unrelated to the requirements of service. He asserts that the Board's finding was based on its own subjective opinion of the photograph, not on evidence in the record. The Superintendent responds that the Board properly excluded the unrelated CR files because they did not involve completely related incidents. The Superintendent further contends that the Board's finding that plaintiff violated the Department's rules was not against the manifest weight of the evidence, and that the Board's decision to discharge plaintiff was not arbitrary or unreasonable.

¶ 18        On review, this court reviews the decision of the Board, not the circuit court. See, *e.g.*, *Krocka v. Police Board*, 327 Ill. App. 3d 36, 46 (2001) (citing *AFM Messenger Service, Inc. v. Department of Employment Security*, 315 Ill. App. 3d 308, 312 (2000)). In reviewing the Board's decision, this court employs a two-step analysis. *Walsh v. Board of Fire & Police Commissioners*, 96 Ill. 2d 101, 105 (1983). We first determine whether the agency's factual findings are against the manifest weight of the evidence. *Krocka*, 327 Ill. App. 3d at 46 (citing *Launius*, 151 Ill. 2d at 427). Then, this court must determine whether the findings of fact provide sufficient basis for the agency's determination that there is cause for discharge. *Id.* (citing *Launius*, 151 Ill. 2d at 435); see also *Kappel v. Police Board*, 220 Ill. App. 3d 580, 588 (1991). The determination of whether particular evidence is relevant is within the discretion of the

hearing officer, and we will not disturb that determination absent an abuse of discretion. *Comito v. Police Board*, 317 Ill. App. 3d 677, 691 (2000) (citing *McCleary v. Board of Fire & Police Commissioners*, 251 Ill. App. 3d 988, 994 (1993)).

¶ 19    Plaintiff first contends that the hearing officer erred in denying his motion *in limine* to have the Board take administrative notice of the CR files. He maintains that the hearing officer's ruling prejudiced his ability to receive a fair trial because the CR files were relevant evidence of the Superintendent's selective enforcement of the Department's rules.

¶ 20    We initially observe that both parties rely on *Launius* to support their arguments. Plaintiff contends that the Superintendent misquoted *Launius* during the hearing causing the hearing officer to rule that the CR files should not be admitted because the circumstances in the files were not identical to plaintiff's. Plaintiff asserts, however, that the *Launius* standard permits courts to compare discipline in different cases to determine if an administrative body's decision was arbitrary and unreasonable. The Superintendent responds that *Launius* permits a court to make such comparisons only where the situations involved are "completely related," involve the same incident, or "identical circumstances," which was not the case here.

¶ 21    In *Launius*, plaintiff Launius, a CPD police officer, abandoned his post at the police station when he learned that his home was in danger of being flooded due to heavy rainfall. *Launius*, 151 Ill. 2d at 423. Launius requested permission to leave his post because he feared for the safety of his family, but the commanding officer denied his repeated requests. *Id.* at 423-24. Following a hearing, the Board found that Launius violated several Department rules and discharged him from his position as a police officer. *Id.* at 426-27. Before the supreme court, Launius contended that another police officer, Richard Czyzewski, engaged in similar misconduct during the flooding, but received only a four-day suspension, and Launius had

presented the circumstances surrounding Officer Czyzewski's discipline to the Board. *Id.* at 440. Officer Czyzewski, who was off duty on the day of the flooding, was contacted by a superior and ordered to report for duty, despite his protests that he was unable to leave his home due to the flooding. *Id.* at 441. Officer Czyzewski responded to his superior's continued requests to report for duty with an obscenity. *Id.*

¶ 22     The supreme court noted that "[a]n administrative tribunal's finding of 'cause' for discharge may be considered arbitrary and unreasonable when it is compared to the discipline imposed in a completely related case." *Id.* at 441-42 (citing *Wilson v. Board Of Fire & Police Commissioners*, 205 Ill. App. 3d 984, 992 (1990)). The court observed, however, that cause for discharge can be found regardless of whether other employees have been disciplined differently. *Id.* at 442 (citing *Lyles v. Department of Transportation*, 183 Ill. App. 3d 901, 911-12 (1989)). The court determined that the circumstances surrounding Launius' discipline were different than those in Officer Czyzewski's case, and the facts of each case were not sufficiently related to render the Board's decision to discharge Launius arbitrary and unreasonable. *Id.* at 443.

¶ 23     As plaintiff points out, both the CR files and his case involved officers who appeared in photographs that garnered negative media attention for the Department. However, the CR files involved officers in completely unrelated cases, and, as the hearing officer recognized, neither incident in the CR files was brought before the Board. Moreover, the charges against plaintiff did not arise out of the same incident as those described in the CR files (see *Basketfield v. Daniel*, 71 Ill. App. 3d 877, 881 (1979)), nor are the circumstances in each case identical (*Launius*, 151 Ill. 2d at 442). As this court has recognized, "the fact that different individuals have been disciplined differently is not a basis for concluding that an agency's disciplinary decision is unreasonable; such conclusions are appropriate when individuals receive different disciplines in a single,

identical, 'completely related' case." *Siwek v. Police Board*, 374 Ill. App. 3d 735, 738 (2007). We cannot say that plaintiff's case is sufficiently related to those contained in the CR files that the hearing officer abused her discretion in denying plaintiff's motion *in limine* to have the Board take administrative notice of the files. *McCleary*, 251 Ill. App. 3d at 1000.

¶ 24        Nonetheless, plaintiff contends, citing *Fox v. Illinois Civil Service Comm'n*, 66 Ill. App. 3d 381, 392 (1978), that the hearing officer should have granted his motion because the CR files were evidence of selective enforcement by the Department. In *Fox*, Pearl Fox was discharged from her position with the Illinois Department of Revenue after using profanity on the job. *Id.* at 386. This court affirmed the circuit court's reversal of the Illinois Civil Service Commission's discharge of Fox where she presented evidence that the use of profanity was commonplace among the employees and no investigations or disciplinary actions were taken against any employees in similar situations. *Id.* at 392. The court noted, however, that selective enforcement alone could not excuse Fox's behavior, but that Fox presented sufficient evidence regarding arbitrary discipline, including the testimony of numerous witnesses. *Id.*

¶ 25        In this case, by contrast, plaintiff merely submitted CR files from two completely unrelated cases involving different circumstances and different charged rule violations. The only unifying factor in each case was that CPD officers appeared in a photograph that garnered media attention. Although the court found evidence of selective enforcement relevant in *Fox*, the court in that case, and the courts in subsequent cases, have held that selective enforcement cannot excuse employee behavior where there is a finding that the employee violated employment rules. See, *e.g.*, *Davis v. City of Evanston*, 257 Ill. App. 3d 549, 559-60 (1993). As the supreme court explained in *Launius*, cause for discharge can be found regardless of whether other employees have been disciplined differently. *Launius*, 151 Ill. 2d at 442; see also *Davis*, 257 Ill. App. 3d at

560 (and cases cited therein).

¶ 26　　　Consistent with that reasoning, this court has declined to compare the discipline imposed in separate cases where the cases involved do not comprise identical circumstances. See, *e.g.*, *Chisem v. McCarthy*, 2014 IL App (1st) 132389, ¶ 25; *Siwek*, 374 Ill. App. 3d at 738. Moreover, this court has noted that Fox's discharge was overturned not merely because of alleged selective enforcement as plaintiff seems to suggest, but because the "totality of the circumstances" required reversal. See, *e.g.*, *Bono v. Chicago Transit Authority*, 379 Ill. App. 3d 134, 145 (2008); *Ruffin v. Department of Transportation*, 101 Ill. App. 3d 728, 734 (1981). Accordingly, we find that the hearing officer did not abuse her discretion (*Comito*, 317 Ill. App. 3d at 691) in denying plaintiff's motion *in limine* to have the Board take administrative notice of the CR files.

¶ 27　　　Plaintiff next contends that the Board's decision to discharge him from his employment was arbitrary, unreasonable, and unrelated to the requirements of service because there was insufficient evidence presented to support the Board's finding that he violated the Department's rules. We initially observe that plaintiff misunderstands our standard of review. In his brief, plaintiff states that he does not challenge the Board's findings of fact as being against the manifest weight of the evidence. Throughout his brief, however, plaintiff contends that the Board erred in finding that he violated Rules 2, 8, and 38 because the Superintendent presented insufficient evidence to carry its burden and the Board erred by applying its "own sensibilities" to the photograph. Plaintiff essentially conflates the two standards involved in our two-step administrative review in arguing that the Board's decision to discharge him was arbitrary and unreasonable because there was insufficient evidence in the record to demonstrate that he violated the rules charged. This contention, as the Superintendent points out, challenges the Board's findings of fact based on the evidence presented. See, *e.g.*, *McCloud v. Rodriguez*, 304

Ill. App. 3d 652, 659-60 (1999). We will reverse the Board's findings of fact only if they are against the manifest weight of the evidence. *Krocka*, 327 Ill. App. 3d at 46. Accordingly, we must first determine whether the Board's finding that plaintiff violated Rules 2, 8, and 38 was against the manifest weight of the evidence. *Id.*

¶ 28        On review, we consider the Board's findings of fact to be *prima facie* true and correct. *Launius*, 151 Ill. 2d at 427. The Board's findings will be deemed contrary to the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *McCloud*, 304 Ill. App. 3d at 660. Our inquiry is limited to ascertaining whether the findings and decision of the Board are against the manifest weight of the evidence, and it is not this court's function to reweigh the evidence to determine where the preponderance of the evidence lies. *Collura v. Board of Police Commissioners*, 113 Ill. 2d 361, 372-73 (1986).

¶ 29        Here, the Board determined that plaintiff violated Rule 2, which prohibits "[a]ny action or conduct which impedes the Department's efforts to achieve its policy and goals or brings discredit upon the Department." The Board found that the photograph was "disgraceful and shock[ed] the conscience" because it depicted the African-American male being treated "not as a human being but as a hunted animal." The Board determined that plaintiff's appearance in the photograph discredited the CPD and impaired its effective operation by breeding public contempt for the Department. Plaintiff contends that it was improper for the Board to find that he violated Rule 2 without evidence regarding how his appearance in the photograph discredited the Department.

¶ 30        This court has previously upheld a violation of Rule 2 finding that the discharge of a police officer for "conduct unbecoming to the department is made not only for the purpose of punishing the officer," but also for the protection of the public, which must maintain respect for

the Department. *Kappel*, 220 Ill. App. 3d at 591. Plaintiff is correct in pointing out that the only evidence the Superintendent presented in this case was the photograph, his own testimony, and the testimony of Sergeant Barz. However, the Board found that plaintiff's appearance in the photograph, by itself, was sufficiently serious to constitute a violation of Rule 2 because it impeded the Department's efforts to achieve its policy and goals and brought discredit upon the Department. Based on the evidence in the record, we cannot say that this finding was against the manifest weight of the evidence.

¶ 31        Plaintiff nevertheless contends that it is "vital" that the evidence showed that the photograph was taken sometime between October 14, 1999, and July 1, 2003, and that Sergeant Barz received the photograph in January 2013, because the Superintendent presented no evidence that plaintiff's appearance in the photograph impeded the Department's efforts in the 10 years since the photograph had been taken. The Board found, however, that plaintiff's appearance in the photograph was sufficient to carry the Superintendent's burden to prove that plaintiff violated this rule. The Board found that plaintiff violated Rule 2 because his appearance in the photograph discredited the Department by breeding public contempt for the Department. The timing of the photograph is irrelevant to that determination. As the Board recognized, plaintiff's appearance in the photograph discredited the Department in the eyes of the public, which must maintain respect for the Department. *Id.* at 590, 591. Based on the Board's finding that plaintiff appeared in a photograph that depicted an African-American male as a "hunted animal," we cannot say that the Board's determination that plaintiff violated Rule 2 is against the manifest weight of the evidence.

¶ 32        The Board also found that plaintiff violated Rule 8, which prohibits the "[d]isrepect or maltreatment of any person, while on duty or off." Plaintiff contends that the Board erred in

finding that he violated this rule because the African-American male was unidentified and there was no evidence that he was coerced into appearing in the photograph. There was extensive argument during oral arguments regarding the Superintendent's failure to present evidence that the African-American male was coerced into appearing in the photograph. The Board found, however, that plaintiff violated this rule irrespective of whether the African-American male was coerced into appearing in the photograph. The Board determined that plaintiff's willing appearance in the photograph was sufficient to constitute a violation of this rule. For the reasons stated above in regard to Rule 2, we find that the Board's determination that plaintiff violated Rule 8 was not against the manifest weight of the evidence.

¶ 33    Finally, the Board determined that plaintiff violated Rule 38, which prohibits the "[u]nlawful or unnecessary use or display of a weapon." The Board found that plaintiff's appearance in the photograph, which he acknowledged had no police purpose, with "what appears to be a rifle in his hand" was sufficient to show a violation of the rule. During the hearing, plaintiff acknowledged that he was holding a "long gun" in the photograph and that there was no police purpose for the photograph. We agree with the Board that this evidence was sufficient to support a violation of Rule 38 because plaintiff was unnecessarily using or displaying a weapon. Accordingly, we find that the Board's determination that plaintiff violated Rule 38 was not against the manifest weight of the evidence.

¶ 34    We next address whether the Board's findings of fact provided sufficient basis for the determination that there was cause for plaintiff's discharge. *Siwek*, 374 Ill. App. 3d at 738. A police officer may not be discharged from his employment unless there is cause for his termination. *Thomas v. Police Board*, 90 Ill. App. 3d 1101, 1105 (1980). In Illinois, "cause" has been defined as some "substantial shortcoming which renders [the employee's] continuance in

his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as good cause for his" discharge. (Internal quotation marks omitted.) *Walsh*, 96 Ill. 2d at 105. The Board has considerable latitude and considerable discretion in determining what constitutes cause for discharge. *Kappel*, 220 Ill. App. 3d at 590.

¶ 35    On review, "we may not consider whether we would have imposed a more lenient disciplinary sentence; instead, our review is limited to a determination of whether the Board acted unreasonably or arbitrarily by selecting a type of discipline that was inappropriate or unrelated to the needs of the service." (Internal quotation marks omitted.) *Siwek*, 374 Ill. App. 3d at 738 (quoting *Krocka*, 327 Ill. App. 3d at 48, citing *Wilson*, 205 Ill. App. 3d at 992). The Board is given wide latitude to determine the appropriate punishments that not only punish the conduct of the officer, but also deter future conduct by other officers. *Kappel*, 220 Ill. App. 3d at 590.

¶ 36    In this case, the Board found that plaintiff violated three of the Department's rules, which it determined was sufficient basis to discharge him from his employment. This court has found that an officer's violation of a single rule has long been held to be a sufficient basis for termination. *Siwek*, 374 Ill. App. 3d at 738 (and cases cited therein). Plaintiff contends that the Board's decision was unreasonable given the mitigating evidence he presented, including the testimony of his character witnesses and his testimony regarding his commendations and employment history. However, the Board is not required to give mitigating evidence sufficient weight to overcome a termination decision, and a discharge made despite the presentation of such mitigating evidence is not, without more, arbitrary or unreasonable. *Siwek*, 374 Ill. App. 3d at 738-39 (citing *Kappel*, 220 Ill. App. 3d at 596-97). The Board determined that the mitigating evidence plaintiff presented did not "mitigate the seriousness of his misconduct." We may not

consider whether we would have imposed a more lenient disciplinary sentence (*Siwek*, 374 Ill. App. 3d at 738), and based on the Board's finding that plaintiff violated three of the Department's rules, the Board's decision to discharge him was not arbitrary or unreasonable.

¶ 37                                        III. CONCLUSION

¶ 38         For the reasons stated, we affirm the decision of the Board finding plaintiff in violation of three of the Department's rules and discharging him from the Department.

¶ 39         Affirmed.